## MONOLITH PORTLAND MIDWEST CO. v. WESTERN PUBLIC SERVICE CO.

### No. 2727.

Circuit Court of Appeals, Tenth Circuit.

May 24, 1944.

M. E. Corthell, of Laramie, Wyo. and John U. Loomis, of Cheyenne, Wyo., for appellant.

J. R. Sullivan, of Laramie, Wyo., and Clarence A. Davis, of Lincoln, Neb. (Davis, Stubbs & Ackerman and William W. Redmond, all of Lincoln, Neb., on the brief), for appellee.

Before BRATTON and HUXMAN, Circuit Judges, and RICE, District Judge.

RICE, District Judge.

Appellant[1] owns and operates a cement manufacturing plant in or near the city of Laramie, Wyoming. Appellee[2] owns and operates an electric power plant from which the plaintiff procures and has for a number of years procured electrical energy for the operation of its plant.

On March 4, 1933, plaintiff and defendant entered into a written contract which superceded a prior contract dated October 11, 1927. The 1933 contract adjusted some differences between the plaintiff and defendant, one of which was an indebtedness due from the plaintiff to the defendant for electrical energy in the sum of $71,468.21. It also provided the terms whereby and under which defendant was to furnish electrical energy to the plaintiff to be used in the operation of its cement plant in the future. The contract provided that the plaintiff should procure all its electrical energy from the defendant; that in turn the defendant should operate and maintain at its sole cost and expense a power plant and other equipment necessary for the delivery of the electrical energy contemplated. The contract provided that the plaintiff could not demand electrical energy at a rate to exceed 2,000 kilowatts without the prior written consent of an executive officer of the defendant company. The plaintiff did not agree to take electrical energy at the rate of 2,000 kilowatts. However, it may be said that the contract contemplated the delivery by the defendant of electrical energy at that rate if it was desired by· the plaintiff. The contract contained the following provisions pertaining to interruption of supply: "If the power company shall for a period of time be prevented from delivering electric energy in whole or in part hereunder because of *faiute* (failure) of its source of energy or because of injuries to or breakdown of its lines or other apparatus or other causes beyond its control, such interruption shall not constitute a breach hereof, nor shall a cause of action for damages against the power company accrue to the cement company * * *".

Plaintiff, in its original petition, and in each of the five amended petitions, alleged the execution of the contract and attached a copy thereof, and then alleged that in 1937 the defendant failed to supply energy at the contract rate; that such failure was due to the negligence of the defendant and resulted in great damage to the plaintiff. The allegations of the plaintiff are as follows:

"Notwithstanding its obligations under said contract, the defendant failed, neglected and refused to furnish, operate and maintain its power plant and equipment in fit or suitable condition to enable it to furnish the electric energy which it had contracted to furnish to plaintiff, but on the contrary the defendant *negligently and carelessly* (emphasis ours) permitted its boilers to become in bad state of repair and subject to insufficient operations and to failures, and defendant negligently and carelessly failed to provide and maintain suitable motors and equipment to operate the circulating pump· in the large condenser for the 2500 kilowatts turbine.

"Due to such negligence and carelessness on the part of defendant, its plant and equipment became and was subject to power failures, causing failures in the supply of electric energy to plaintiff and thereby injuring and damaging plaintiff in the following particulars * * *".

The defendant, in its answer, admitted the contract; denied any negligence in the management of its plant or in the maintenance of its plant; admitted certain outages or failures on its part in the month of

---

[1] Hereinafter referred to as plaintiff.

[2] Hereinafter referred to as defendant.

July, 1937, to supply electrical energy at the rate of 2,000 kilowatts; but alleged that its failure was the result of causes beyond its control. Defendant also filed a counterclaim for a balance due it for electrical energy sold and delivered to plaintiff. Plaintiff, after having the benefit of defendant's answer, renewed its allegations of negligence in a reply. Trial to a jury resulted in a verdict in favor of plaintiff for $1,377, and in favor of defendant, on its counterclaim, for $3,003.54. The judgment of the court, based upon the verdicts, was in favor of the defendant for the difference of $1,626.54.

Plaintiff, upon trial of the cause, made no effort to prove its allegations of negligence, although at a pre-trial conference the court had directed the defendant to disclose to plaintiff all its records in regard to repairs to its equipment, particularly a new boiler that had been installed; that the names of the parties making the repairs and their supervisor be furnished to plaintiff; and also that the defendant disclose its records in regard to power failures and excess burdens on its machinery. Plaintiff's effort was directed towards establishing its damages.

At the conclusion of plaintiff's evidence the defendant interposed a motion for directed verdict, based upon a failure of proof, specifically a failure to show any violation of duty on the part of the defendant or to establish negligence. The trial court overruled the motion with the privilege of renewing it. The defendant thereupon introduced its evidence, and explained the reason for the failure on its part to supply energy at the contract rate on the occasions mentioned in plaintiff's testimony and in its complaint. The defendant's evidence disclosed that the chief cause for delay on its part was a bolt of lightning, clearly an act of God. At the close of all the evidence defendant renewed its motion for a directed verdict, which motion was overruled.

■ The record discloses that the trial judge entertained grave doubt as to the sufficiency of the plaintiff's proof, but out of an ambundance of caution, we think, submitted the cause to the jury. Under the state of the record, the trial court should have sustained the defendant's motion for a directed verdict. When the trial court overruled the defendant's motion for a directed verdict at the close of the plaintiff's testimony, the defendant was faced with the question of whether or not to submit the case without proof or whether to introduce its proof as to the reasons for the admitted outages. The defendant elected to present its proof, but in doing so did not waive its right to insist upon its motion for a directed verdict. Federal Rules of Civil Procedure, rule 50, 28 U.S. C.A. following section 723c. The evidence that was introduced by the defendant did not affirmatively establish negligence on its part.

On appeal, plaintiff in the main complains that the trial court unduly restricted it in both its pleadings and proof as to damages, and that the trial court improperly instructed the jury as to the measure of damages. The plaintiff now asserts that the burden was upon the defendant to satisfactorily explain its failure to supply energy at the contract rate. The defendant asserts that the burden was upon the plaintiff to establish that the failure was due to the defendant's negligence.

The plaintiff now makes the contention that the mere failure of the defendant to supply electrical energy at the contract rate of 2,000 kilowatts, resulting in damage to it, is sufficient to warrant a recovery. This position does not square with the allegations of its petition. Either the plaintiff thought at the beginning of the suit that under the contract it was incumbent on it to prove negligence, and that a mere failure on the part of the defendant to supply energy at the rate provided for in the contract was not sufficient, or at some later date the plaintiff adopted a different theory which was not disclosed, so far as the record is concerned, until the conclusion of the trial. In view of the terms of the contract it may not be successfully contended that a mere failure on the part of the defendant to supply energy at the contract rate entitled plaintiff to damages. The contract specifically provided that under certain circumstances an interruption in its service should not constitute a breach of the contract, nor should a cause of action for damages against the power company accrue to the cement company.

■ The burden was upon the plaintiff to establish by a preponderance of the evidence facts that would entitle it to recover. Plaintiff relied upon a negligent failure on the part of the defendant to maintain its plant in proper condition and to supply power at the contract rate, and under the language of the contract we think the

860

plaintiff must of necessity rely upon such negligence. Having failed to offer any proof of negligence on the part of the defendant, the motion for a directed verdict should have been sustained.

■ Having reached this conclusion, it is not necessary to discuss the other errors relied on in the briefs of the parties filed herein. Any errors on admission of evidence and all instructions to the jury, under the circumstances, were such as did not affect the substantial rights of the plaintiff and are not grounds for reversal, 28 U.S.C. A. § 391.

The amount of the judgment obtained by the defendant on its cross-action against the plaintiff was reduced by reason of a verdict of the jury in favor of the plaintiff and against the defendant. However, the defendant has not appealed from the judgment of the plaintiff and against it.

The judgment of the court is affirmed.