411 So.2d 72 (1982)
Jerry K. TILLEY and Nora M. Tilley, Individually and as Natural Tutrix For the Use and Benefit of Keith Ashley Tilley, Plaintiffs-Appellants,
v.
MOUNT VERNON INSURANCE COMPANY, Lovelace J. Hebert, Individually and Lovelace J. Hebert d/b/a Gulf view Motel Apartments, Defendants-Appellees.
No. 8653.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
*73 Brame, Bergstedt & Brame, John E. Bergstedt, Lake Charles, for plaintiffs-appellants.
Stockwell, Sievert, Viccellio, Clements & Shaddock, John S. Bradford, Lake Charles, for defendants-appellees.
Before GUIDRY, SWIFT, and STOKER, JJ.
STOKER, Judge.
This is a suit for damages arising out of an accident in which the plaintiffs' three year old son lost an eye. The accident occurred at the Gulfview Motel Apartments in Holley Beach, Cameron Parish, Louisiana, on the evening of April 13, 1979. Plaintiffs seek to hold liable their host, Robert Johnson, who was a guest-tenant at the motel facility, and to also hold Johnson's liability insurer. The issue in this appeal is the correctness of the trial court's action in granting a directed verdict rather than submitting the case to the jury.
The plaintiffs are divorced. Nora M. Tilley has custody of their son, Keith Ashley Tilley, and is suing as natural tutrix of her minor son. In addition, Jerry Tilley and Nora Tilley are suing individually for medical expenses.[1] The trial court granted a directed verdict after the close of defendants' evidence and plaintiffs' waiver of rebuttal, dismissing the plaintiffs' claim against Robert Johnson and his insurer, State Farm Fire & Casualty Insurance Company. The plaintiffs have appealed this judgment.

FACTS
Defendant Robert Johnson (Johnson) is a part-time employee of plaintiff Jerry Tilley (Tilley) in Shreveport. Johnson had reserved a room at the Gulfview Motel Apartments for the Easter weekend of 1979. He arrived at the motel with his wife and child sometime during the night of Thursday, April 12, 1979. On the following night, Tilley arrived at the motel with his son, Keith, who was visiting with Tilley that weekend according to the visitation agreement between him and his ex-wife, Nora. Johnson had invited Tilley and his son to join him and his family at the motel for the weekend.
*74 Johnson had taken with him two motorcycles which he was storing under the back end of the motel building which stood upon pilings. Sometime shortly after Tilley arrived at the motel, the subject of the motorcycles arose in conversation, and Keith was told that he might be able to ride on one of the vehicles with his father or Johnson on the following day. Keith reportedly became very excited and it was decided to show him the motorcycles that night. Johnson led the way, carrying a flashlight. Keith was given a small portable lamp. Tilley carried no light source. The rear of the building was lit by a security light which illuminated part of the area under the building.
After briefly viewing the motorcycles, the parties turned to go. Johnson did not use his flashlight to light the way out from under the building because he felt that the way was clearly lit by the outside security light. Keith, who was slightly ahead of his father and Johnson, struck his eye on something as he emerged from under the building. It was later concluded by all parties that it was most likely that Keith had struck a bent nail protruding slightly from the end of one of several weather-beaten boards in a crude work bench which had been attached to the pilings for the use of the motel patrons in cleaning fish. The work bench was not underneath the motel structure but extended from the support pilings outward from the structure. Thus it would have been illuminated by the security light. The testimony indicated the light provided enough illumination for people to clean fish after dark. The injury to Keith's eye necessitated its removal and eventual replacement by an artificial eye.
The plaintiffs ground their suit against Johnson on his alleged negligence in leading Keith and his father into a hazardous area and his failure to use the flashlight to illuminate Keith's exit from under the building. The defendants moved for a directed verdict at the close of plaintiffs' evidence, which motion the trial court denied. After defendants presented evidence and rested their case, they again moved for a directed verdict. The trial court at this time granted the motion.[2] Plaintiffs appeal that decision, alleging that (1) the motion for a directed verdict was not timely; and that (2) the granting of the motion was error in that the trial court "made its own conclusion, based upon conflicting evidence, inferences, and credibility, which is the exclusive province of the jury." These arguments will be addressed below.

TIMELINESS OF THE MOTION FOR DIRECTED VERDICT
Plaintiffs contend that it was error for the trial court to grant the defendants' motion for directed verdict made at close of defendants' case. Plaintiffs allege that the motion was untimely following the denial of a similar motion made at the close of the plaintiffs' evidence.
Article 1810 of the Louisiana Code of Civil Procedure authorizes the granting of a directed verdict in civil trials. That statute, in Section A pertaining to jury trials, provides:
"A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."
Plaintiffs refer this court to the opening words of Article 1810, "A party who moves for a directed verdict at the close of the *75 evidence offered by an opponent ...", and contend that this language precludes a party from moving for a directed verdict after the presentation of the moving party's evidence. Under plaintiffs' interpretation, the motion submitted by defendants at the close of plaintiffs' evidence was the only motion timely submitted. This motion was denied by the trial court. The motion submitted by defendants at the close of defendants' evidence would not be timely under plaintiffs' reading of Article 1810.
We reject plaintiffs' construction of LSA-C.C.P. art. 1810. The statute clearly requires that a motion for directed verdict be submitted after the close of evidence of the mover's opponent, but it does not prohibit the submission of the motion after the close of the mover's and his opponent's evidence. Stated otherwise, Article 1810 permits a party to move for a directed verdict at any time after the close of the evidence offered by an opponent, provided that the case as to that opponent has not already been submitted to the jury.
Plaintiffs cite the case of Duplechin v. John Doe, Rimmer & Garrett, Inc., et al, 365 So.2d 53 (La.App. 3rd Cir. 1978), for the proposition that the words "at the close of the evidence offered by an opponent" in Article 1810 are to be interpreted literally. In the Duplechin case, this court reversed a decision in which a motion for a directed verdict was granted after the plaintiff had completed the liability portion of his evidence but had not yet presented his evidence concerning quantum. The court held that under Article 1810 a motion for a directed verdict may be granted only after the close of the nonmover's evidence. This ruling is not inconsistent with the interpretation we have given to Article 1810 in the instant case.
Plaintiffs contend further that, unlike the Federal Rule of Civil Procedure from which it is derived, LSA-C.C.P. art. 1810 does not permit a motion for a directed verdict to be made at any time later than the close of the plaintiff's evidence. The wording of LSA-C.C.P. art. 1810(A), quoted above, is identical to that of F.R.C.P. 50(a). F.R.C.P. 50(b),[3] which was not adopted in Louisiana's Code of Civil Procedure, provides the procedure for a motion for judgment notwithstanding the verdict. A motion for directed verdict made at the close of all the evidence is part of the procedure required by that section of F.R.C.P. 50. Plaintiffs argue in brief that the failure of the Louisiana legislature to adopt paragraph (b) of the federal rule, or to change the wording of Article 1810(A) accordingly, indicates the legislative intent to require that the motion for the directed verdict be submitted immediately after the close of the plaintiff's evidence.
Plaintiffs' contention is not borne out by federal practice. Federal courts, under F.R.C.P. 50(a), allow the defendant to move for a directed verdict after presenting evidence. Under federal jurisprudence, a motion for directed verdict is considered to be waived when the defendant puts on evidence, but the defendant may renew the motion at the close of all the evidence.[4] *76 Federal courts have also encouraged the trial court to defer ruling upon the motion for a directed verdict until both sides have finally rested.[5]
The purpose and use of F.R.C.P. 50(a) is discussed in Wright and Miller's Federal Practice and Procedure:[6]
"Rule 50(a) provides for a motion for a directed verdict at the close of the plaintiff's evidence or at the close of evidence and before the case is submitted to the jury. It enables the court to determine whether there is any question of fact to be submitted to the jury and whether any verdict other than the one directed would be erroneous as a matter of law. It is conceived as a device to save the time and trouble involved in a lengthy jury determination." (Emphasis supplied).
In light of the foregoing, we cannot say the motion for directed verdict adopted from F.R.C.P. 50(a) in LSA-C.C.P. art. 1810(A) was intended by the legislature to be brought only immediately after the close of the plaintiff's evidence. Therefore, a motion for directed verdict under LSA-C. C.P. art. 1810(A) may be brought at the close of all evidence when both sides have rested provided that the case has not yet been submitted to the jury. This is precisely what occurred in this case because prior to allowing the second motion for directed verdict to be made, it was determined that plaintiffs had no rebuttal and counsel agreed that all the evidence had been submitted. (See footnote 2.) The procedure followed by the trial court in this case was correct.

STANDARD FOR DIRECTED VERDICTS
Having determined that the trial court was not in error in considering the motion for directed verdict at the close of evidence, we now must consider whether the trial court applied the correct standard in granting the motion.
LSA-C.C.P. art. 1810 does not provide the standard to be used in considering a motion for directed verdict. That standard has been supplied jurisprudentially. This court in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979), held that the standard applicable to Article 1810(A) is that applied by the Federal court in considering motions for directed verdicts since the source of the Louisiana article is the Federal Rules of Civil Procedure. In the Campbell decision, we adopted the following standard as stated by the U. S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969):
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's case-but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
We now decide whether the trial court correctly applied this standard of proof.

SUFFICIENCY OF EVIDENCE
Plaintiffs allege that Johnson negligently caused the injury sustained by Tilley. Generally, Johnson is charged in plaintiffs' petition with failure to inspect the premises, failure to warn his guests of dangers of which he was aware or should have *77 been aware and failure to correct "any such defects".[7]
We note preliminarily that, while it is reasonably certain that Keith injured his eye while emerging from underneath the motel, it is not clear just how he did it. This point is immaterial, however, because the conclusion the jury might have reached which would have been most favorable to plaintiffs is that Keith struck either the protruding nail point or he simply struck the protruding board or one of the others in the fish board structure. Any considerations the jury might have made in assessing the responsibility of Robert Johnson (cause in fact, legal cause, duty-risk analyses, legal policy, and so on) require a clear picture of the arrangement of the physical features at the scene of the accident.
The fish board and its location is graphically shown in various pictures filed in evidence. As stated above, it is not located beneath the motel building but is outside attached to the pilings supporting the motel building. Therefore, it was illuminated by whatever light was shed by the security light. The security light was located approximately thirty feet from the building and shed some light underneath the building.
The fish board itself, used for cleaning fish, appears to have been constructed of used lumber. A schematic diagram and illustrative sketches of the fish board accompany this opinion for aid in description. Something in the nature of 2" × 8" boards are nailed horizontally onto two pilings so as to extend outward from the building, and each is supported by struts of 2 × 4 or 2 × 6 lumber. The two horizontal pieces serve as support for the boards constituting the surface of the working area (referred to inclusively as the "fish board") on which the fish were placed for cleaning. Approximately four such individual boards are depicted in the pictures with spaces in between them. These boards extend approximately two feet sidewise beyond the horizontal supports on which they rest. This extension or overhang appears to be approximately a foot and a half to the side of the pilings. At the end where Keith was injured, the board farthest from the piling is the board which contained the nail in it. The nail appears to have been driven through from the underneath side of the board which appears to be at least two inches thick. The nail protrudes from the top of the board about one-half to one inch from the end of the board. The nail had been bent over the end of the board but the tip of the nail (the sharp end) tilted upward slightly and had not been beaten into the end of the board. Some of the other boards between the end board and the piling appear to be rotten and their ends were quite jagged.
*78 
Young Keith Tilley was under four years of age, and possibly the boards, including the one with the nail on it, were at about Keith's eye level. Evidently, his eye came in contact with either the nail, the edge of the board with the nail in it, or one of the other boards. No one actually knows what happened and the assumptions of the parties *79 were formed after the incident when the premises were inspected later to determine what might have happened.
From the description given above, for Johnson to have incurred liability for Keith's mishap and injury, it would have been necessary for the jury to have found Johnson was negligent, that the negligence was a cause in fact of the accident and that it was a legal cause of the accident. This involves a duty-risk analysis. See Professor Ferdinand F. Stone's work, Tort Doctrine, Louisiana Civil Law Treatise, Volume 12, Section 42, in which he discusses the theory developed in Dixie Drive It Yourself System of New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962) and the later cases which followed it and further developed the concepts for resolution of such cases.
Except for the precise manner in which Keith incurred his injury, the facts are clear. Only Johnson and Keith's father, Jerry Tilley, were present and their testimony as to what occurred before and after the accident is not in conflict. From their testimony it is clear that the fish board was located within the illumination of the security light located behind the motel building.
From the facts given to the jury and the description of the physical layout of the area where the accident occurred, it is clear that the fact of the parties having been underneath the motel (and any lack of illumination there) played little or no part in causing the accident. As the eye injury was inflicted by contact with some part of the fish board or the nail embedded in it, the injury occurred as or after Keith emerged from underneath the motel into the illumination. The only part that going beneath the motel played in the unfortunate affair is that the mishap occurred as the parties emerged from under the motel. In fact, a person of Keith's height might just as easily have come in contact with the fish board or the nail in going toward the underneath area of the motel as in coming out, and further, might have done so without having planned to go beneath the motel.
In conformity with the standard adopted in Campbell v. Mouton, supra, we assume, as the most reasonable inference favorable to plaintiffs, that Keith's eye did come in contact with some part of the fish board and that something from the board did penetrate his eye. Therefore, there are no facts upon which reasonable minds might differ. This means that the only thing left to the jury was to apply a standard of conduct to the actions or alleged failures of Johnson. This function is often regarded as a function of the court rather than a fact finding function for the jury. However, the respective functions of the courts and juries are not easy to clearly define or separate. See Prosser, Handbook of the Law of Torts, Fourth Edition, Sections 37, 41 and 45.
As we see the matter, any jury charge would have required the trial court to instruct the jury in the law necessary for the jury to decide whether Johnson met, or failed to meet, the proper standard under the circumstances. Any finding of liability on the part of Johnson would require a finding that he failed to meet some standard of conduct which unreasonably exposed Keith to the risk of injury to his eye such as he sustained. Although Johnson was not the owner of the premises and was not aware of the risk posed to a young child by the protruding boards, plaintiffs maintain that he should have been aware of the risk because he should have inspected the premises. Even if he had known of the protruding nail or had noted the jagged edges and ends of various boards in the fish board, it would be necessary to find that Johnson should have foreseen and anticipated that a young child might injure himself as Keith did. Although foreseeability has been a touchstone in determining negligence liability, Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153 (La.1968), our Supreme Court has observed in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) that foreseeability is not always a reliable guide, and is not the only criterion for determining whether there is a duty-risk relationship. In that *80 case the Supreme Court stated: "Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of duty owed because of that conduct."
We agree with the comments and observations of Professor Stone in his Tort Doctrine, cited above, and in his conclusion that the process of analysis to determine negligence liability as developed by the courts is, in the end, often only a matter of reaching court policy in a given situation; that is, the finding of negligence is a decision made by the courts to extend the protection of the law to exposure to certain risks. In Hill v. Lundin & Associates, the Supreme Court summed up the concept in these words:
"Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the Legislature. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298; Pierre v. Allstate Ins. Co., [257 La. 471, 242 So.2d 821] supra. Where the rule of law is jurisprudential and the court is without the aid of legislative intent, the process of determining the risk encompassed within the rule of law is nevertheless similar. Malone, Ruminations on Dixie Drive It Yourself, 30 La.L.Rev. 363 (1970); McDonald, Proximate Cause in Louisiana, 16 La.L.Rev. 391 (1956). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. "All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape." Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956)."
It is our conclusion that the risk to which Keith was exposed under the circumstances of this case was beyond the protection afforded by law with respect to any duty owed by a transient guest at the motel to a guest of his own. The place where Johnson's vehicles were parked underneath the motel was not rented to him and was not under his control or custody. The same applies to the fish board and the area around it. He had been allowed to park the vehicles where they were by the owner. As a matter of legal policy, any role played by Johnson in Keith's injury was too remote to justify imposing legal liability on him. We conclude that it would have been the trial court's duty to frame such jury instructions that the jury in considering all the evidence as provided in Campbell v. Mouton, supra, could not as reasonable persons arrive at any other verdict than that Johnson was not legally liable for Keith's injury.
Therefore, there was no function for the jury to perform and the trial court did not commit error in granting a directed verdict on the basis of all the evidence. We affirm the trial court's ruling and judgment. Plaintiffs-appellants are assessed with the costs of this appeal.
AFFIRMED.
NOTES
[1] The defendants originally included Lovelace J. Hebert, who was sued both individually and as owner of Gulfview Motel Apartments, and Mount Vernon Insurance Company, Hebert's and Gulfview's liability insurers. As third party plaintiffs, Hebert, Gulfview, and Mount Vernon sued Robert Johnson and reconvened against Jerry K. Tilley. Through a supplemental and amending petition plaintiffs made Robert Johnson an additional defendant along with his insurer, State Farm Fire & Casualty Insurance Company. Hebert, Gulfview, and Mount Vernon settled out of court with the plaintiffs and were dismissed from the present suit. The remaining parties in this appeal are plaintiffs Jerry K. Tilley and Nora M. Tilley, and defendants Robert Johnson and State Farm.
[2] After the defendants' case was concluded the trial court asked the plaintiffs' counsel if plaintiffs had any rebuttal evidence. Counsel replied that plaintiffs had no rebuttal. The trial court then stated: "So in effect, all the evidence is before the court." Plaintiffs' counsel answered in the affirmative. (Tr. 349).
[3] F.R.C.P. 50(b) states:

"(b) Motion for Judgment Notwithstanding the Verdict. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."
[4] See Smitty Baker Coal Co. v. United Mine Workers, 457 F.Supp. 1123 (D.C.Va.1978), footnote 1 at 1125; and Monolith Portland Midwest Co. v. Western Public Service Co., 142 F.2d 857 (C.C.A. 10th 1944).
[5] See Guess v. Baltimore & I. R. Co., 191 F.2d 976 (C.A. 8th, 1951).
[6] Wright and Miller, Federal Practice and Procedure § 2521, at 537 (1971).
[7] The supplemental and amending petition in which plaintiffs made Robert Johnson and his insurer defendants alleges Johnson's negligence as follows:

"G.
"The accident sued upon herein was caused in whole or in part by the negligence of ROBERT M. "BOB" JOHNSON in that the said JOHNSON had an affirmative duty to inspect the subject premises and to warn his invitees of dangers, if any, of which he knew or should have known, and further had the duty to correct or have corrected any such defects, which failure to perform said duty constitutes negligence and a proximate cause of the accident sued upon herein in the following particulars:
(1) In failing to warn the TILLEYS of the dangers of which he knew or should have known;
(2) In failing to take corrective action to remedy or eliminate those dangers of which he knew or should have known;
(3) In failing to properly inspect the subject premises and `common grounds' for dangers;
(4) In leading the minor, KEITH ASHLEY TILLEY, into an unlighted area where JOHNSON knew, or should have known possible dangers existed;
(5) In failing to take the proper precautions in leading KEITH ASHLEY TILLEY into an area of possible dangers of which he knew or should have known;
(6) In failing to maintain a proper lookout for himself and his invitees and to warn his invitees of dangers which were visible;
(7) In generally participating in an unsafe journey, which the said JOHNSON knew or should have known posed a danger for the minor, KEITH ASHLEY TILLEY:
(8) Such other acts of negligence as will be more fully shown at the trial hereof."