427 So.2d 911 (1983)
Jennifer S. RONSTADT, Plaintiff-Appellant,
v.
BEGNAUD MOTORS, INC., Defendant-Appellee.
No. 82-485.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Writ Denied March 25, 1983.
*912 Charles Brandt, Lafayette, for plaintiff-appellant.
Pugh & Boudreaux, Donlon Pugh, Lafayette, for defendant-appellee.
Before STOKER, YELVERTON and KNOLL, JJ.
STOKER, Judge.
Is an automobile repairman who performs faulty work responsible to a driver criminally attacked when the vehicle breaks down on the open road?
The plaintiff sues defendant, Begnaud Motors, Inc., for damages she received in the course of a rape, beating, and robbery which occurred while plaintiff was stranded in her employer's automobile. Plaintiff had just previously picked up the vehicle from the defendant, which had done repair work on the vehicle.
Plaintiff appeals from the trial court's ruling sustaining defendant's peremptory exception of no cause of action. We affirm.
The plaintiff contends on appeal that her petition states causes of action based on two theories of recovery, tort and breach of contract. With reference to the breach of contract theory, we find that plaintiff has not alleged damages arising out of failure to perform the contract. With reference to the tort theory, the risk to which the plaintiff was exposed did not fall within the scope of the duty owed by the defendant to the plaintiff.

FACTS
Inasmuch as we must accept the allegations contained in plaintiff's petition as true for the purposes of reviewing the validity of the exception, we quote from the petition as follows:
(2)
"On or about April 14, 1981, petitioner Jennifer S. Ronstadt, was employed by Sullair Gulf States, Inc., a subsidiary of Sullair Corporation. She had been provided with a company vehicle, particularly a 1981 Oldsmobile, Model 88, which she brought to Begnaud Motors, Inc., to have certain repair work done, particularly to replace an air conditioner belt because the air conditioner was not working.

*913 (3)
"While the vehicle was in the shop being repaired, a plug which fit into the alternator of the subject vehicle was disconnected, apparently in order to effect repairs.
(4)
"The employee or employees who repaired the vehicle in question failed to replace this plug.
(5)
"Petitioner received her vehicle from Begnaud Motors and was advised that it had been repaired satisfactorily.
(6)
"At approximately 5:00 P.M. on April 14, 1981, after taking delivery of the subject vehicle from Begnaud Motors, Inc., petitioner began a trip to New Orleans, Louisiana. When petitioner reached the Gramercy exit she turned her lights on and her car slowed down as if it were going to stop and her lights went out. She turned off on the Gramercy exit in an effort to get to a mechanic to have the problem resolved.
(7)
"After traveling a number of miles in a vain search for help, she made a U-turn and started back towards the interstate. The car stopped running and completely died several miles from the interstate.
(8)
"Petitioner pulled the vehicle onto the shoulder of the road and stopped. A few moments later a man in a pickup truck approached her under the pretense of rendering aid. At the time her vehicle had stopped she had her windows approximately one half rolled down and the individual who had stopped, purportedly to render aid, asked her to pull the latch on her hood so that he could examine her engine compartment. When she did so, he reached inside the door and pulled open the lock, and opened the door.
(9)
"Producing a pistol, he shoved it in her face and threatened to kill her if she did not cooperate. He shoved her violently around in the interior of the vehicle onto the passenger floor side. He stole petitioner's valuables, and after twisting petitioner's neck back and forth by jerking her by the hair, this unknown male subject raped petitioner.
(10)
"This unknown male subject then made good his getaway.
(11)
"Soon thereafter three men came to her rescue, and, examining her vehicle, found that the plug connecting to the alternator had not been replaced at the repair shop by the employees of Begnaud Motors.
(12)
"Replacing the plug, these men gave her a jump start and escorted her back to the interstate where she was able to flag down an officer of the law.
(13)
"The above described injury to petitioner resulted solely from the negligence of the defendant in the following particulars:
(A) In failing to properly repair petitioner's vehicle;
B) In failing to discover that the alternator plug was disconnected;
C) In failing to reattach the alternator plug to the alternator;
D) In disconnecting the plug to the alternator;
E) In failing to do what they could have done to prevent petitioner's car from breaking down;
F) In causing petitioner's car to malfunction.

*914 (14)
"Defendant is also liable to petitioner for breach of contract under Article 1930 of the Louisiana Civil code for all damages which petitioner has sustained by the default of defendant.
(15)
"As a result in the above described negligence petitioner suffered severe and painful personal injuries, including, but without limitation, acute traumatic cervical strain, acute traumatic upper thoracic sprain, acute traumatic cervical brechial syndrome, cervical and upper thoracic myofacitis, myalgia, a reoccurance of a dormant condition known as diffuse gastritis and irritable bowel disorder with mixed emotional features including anxiety, depression, with some psyiophysicologic muskuloskeletal components.
(16)
"Although petitioner had attempted to work, she has been diagnosed as completely disabled at this time.
(17)
"Petitioner has been hospitalized and treated by numerous physicians in connection with the injuries suffered.
(18)
"At the time of her injury, petitioner was engaged in the business of oilfield sales and was, in addition to her salary of $1,600 per month, paid a commission on all sales together with being provided with a company car, medical insurance, and an expense account which petitioner alleges is the equivalent of a ____

(19)
"Petitioner has suffered severe pain and endured keen mental anguish as a result of the negligence of defendant.

(20)
"Petitioner avers that she is entitled to the following amounts from the defendant as a result of the accident and negligence set forth herein above.

1) Hospital expenses, past
 and future $20,000.00
2) Surgeons services, past
 and future 20,000.00
3) Physical pain and suffering 500,000.00
4) Loss of wages to date of
 filing suit 24,000.00
5) Permanent disability and
 loss of the enjoyment of
 life 500,000.00
6) Loss of future wages 1,440,000.00
7) Mental anguish and pain 500,000.00
8) Loss of personal items stolen 7,245.00
 _____________
 TOTAL $3,011,000.00

"WHEREFOR, petitioner prays that after due proceedings, there be judgment herein favor of petitioner, JENNIFER S. RONSTADT, and against the defendant, BEGNAUD MOTORS, INC., in the sum of $3,011,000.00 together with legal interest from date of judicial demand and for all costs of these proceedings."

BREACH OF CONTRACT THEORY
We conclude that plaintiff's petition does not state a cause of action for breach of contract. To properly state such a cause of action a plaintiff must allege a violation of the contract and that damages were sustained as a result. LSA-C.C. art. 1930. Damages recoverable for breach of contract are set out in LSA-C.C. art. 1934, which is quoted in pertinent part as follows:
"Art. 1934. Measure of damages for breach of contract
"Art. 1934. Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not *915 meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will."

* * * * * *
Since plaintiff Ronstadt alleged no fraud or bad faith, defendant's liability for the damages set out in paragraph twenty of plaintiff's petition must either have been contemplated or must reasonably be supposed to have entered into the contemplation of the parties. We do not believe the possible liability of the defendant for the damages so set forth in plaintiff's petition could have entered into the minds of the plaintiff and defendant's employees at the time the contract for repair was entered into. It may be that the parties contemplated such items of damages as towing charges, additional repair charges, or rental car charges in the event that defendant breached the contract. However, we do not believe damages sustained as the result of a beating, rape and robbery of the plaintiff would reasonably have been within the contemplation of the parties.

TORT THEORY
To reverse the trial court and reinstate the plaintiff's case, we must find that, accepting the facts as alleged in the petition to be true, Begnaud Motors was negligent, the negligence was a cause-in-fact of the accident and it was a legal cause of the accident. This involves a duty-risk analysis. Tilley v. Mount Vernon Ins. Co., 411 So.2d 72 (La.App. 3rd Cir.1982).
Using a duty-risk analysis, we conclude that because the risk of injury from the violent acts from a third person did not fall within the duty of the defendant to properly repair the automobile, defendant's alleged negligence is not the legal cause of plaintiff's injuries. Therefore, the plaintiff has failed to state a cause of action under a tort theory of recovery.
Without doubt the defendant's alleged failure to replace the alternator plug was a cause-in-fact of the injuries allegedly suffered by the plaintiff, and the alleged act was the breach of a duty the defendant owed plaintiff (negligence). However, the duty breached must have been intended to protect against the particular risk of harm to which the plaintiff was exposed and which caused her injuries.
We conclude that the risk that an unknown person would commit violent and harmful acts against the plaintiff does not fall within the scope of protection of defendant's duty owed to plaintiff. Although it is foreseeable that the plaintiff could suffer harm in this manner, foreseeability is not the only criterion to be considered. Whether or not the risk falls within the scope of the duty owed must be determined by the court on a case-by-case basis, with each court weighing the policy factors it considers important. Tilley v. Mount Vernon Ins. Co., supra, and Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (La.1972).
In this case, the policy considerations tip the scales in favor of affirmance of the trial court. The plaintiff's alleged damages were sustained in a manner not easily associated with the traditional risk of faulty automobile repairs. Ordinarily, when a mechanic performs repairs negligently, the result is that a plaintiff suffers damage from a collision with another vehicle or a stationary object. The alleged crimes committed against plaintiff only remotely occurred in time and distance with respect to the alleged acts of the defendant. The damages alleged would not have been incurred but for the unpredictable acts of a third person. Most courts have been reluctant to hold a defendant liable for the acts of a third person. Hill v. Lundin & Associates, Inc., supra. Although we deplore the wrong done to plaintiff, we conclude that the trial court was correct in dismissing the plaintiff's suit.
For the foregoing reasons the trial court correctly sustained defendant's exception of no cause of action. The judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.