459 So.2d 238 (1984)
Billie J. Argus, wife of/and Herbert ARGUS
v.
William C. SCHEPPEGRELL, Jr., M.D.
No. 83-CA-496.
Court of Appeal of Louisiana, Fifth Circuit.
November 21, 1984.
Rehearing Denied December 17, 1984.
Writ Granted March 8, 1985.
*239 Douglas A. Kewley and Bruce A. North, Molony, Nolan, North & Riess, Metairie, and William J. Scheffler, III, Gretna, for Billie J. Argus, wife of/and Herbert Argus, plaintiffs-appellants.
Dominic J. Gianna and John D. Person, Hammett, Leake & Hammett, New Orleans, for William C. Scheppegrell, Jr., M.D., defendant-appellee.
Before BOUTALL, CURRAULT, and DUFRESNE, Jr., JJ.
BOUTALL, Judge.
This case arises from a wrongful death action against a physician brought by parents for the death of their daughter. The plaintiffs appeal a judgment in favor of the defendant.
Cynthia Argus ("Cindy"), nineteen years old, swallowed an undetermined number of tuinal tablets prescribed by Dr. William C. Scheppegrell, Jr., on August 17, 1977, became comatose, and on September 19, 1977 expired without regaining consciousness. Cindy had visited the office of Scheppegrell from December 17, 1975 through August 15, 1977, and beginning with her second visit had received prescriptions regularly for Phenmetrazine Hydrochloride (Preludin), as an appetite suppressant and for Amobarbital Secobarbital (Tuinal) for sleep. Both drugs are controlled dangerous substances under Louisiana law. LSA-R.S. 40:964. On several occasions she also received prescriptions for Vallium.
Billie J. Argus and Herbert Argus, Cindy's mother and father, filed suit on October 6, 1977. On November 24, 1980, a medical review panel rendered an opinion in accordance with LSA-R.S. 40:1299.47 to the effect that Dr. Scheppegrell failed to comply with the appropriate standard of care. The panel agreed with the allegations of the plaintiffs' petition that Dr. Scheppegrell was negligent in
"1. Prescribing drugs over a prolonged period of time, which drugs he knew, or should have known, would cause addiction.
"2. Prescribing drugs in such quantities that their use was deleterious to human life and health."
Trial was held before a jury which returned a verdict in favor of the defendant, Dr. Scheppegrell. The responses of the jury to interrogatories indicate that it found: Dr. Scheppegrell was negligent; his negligence was a proximate cause of Cindy's death; and that Cindy was negligent and her negligence was a cause of her death. In accordance with these responses, because Cindy's contributory negligence barred the parents' recovery, the judge rendered judgment dismissing plaintiff's suit.
The basic premise of plaintiffs' appeal is that the doctor either deliberately, or grossly negligently, performed such acts that so imperilled this young girl that he cannot be excused from the consequences. Appellants refer to the fact that prior to this trial but after Cindy's death Dr. Scheppegrell pleaded guilty to a charge of prescribing for another person controlled dangerous substances not in the usual course of medical practice, and served sixteen months in a Federal prison. Reference is also made to a motion of the defendant, granted by the Court, excluding evidence regarding his treatment of patients other than Cindy or alleged exchanges of prescriptions for sexual favors with other patients and excluding use of the transcript from the Federal criminal trial.
The appellant assigns as errors the court's failure to instruct the jury as to the following: (1) the duty of Dr. Scheppegrell not to commit any affirmative acts that increased the peril of his patient; (2) the unavailability of contributory negligence as a bar to recovery when the doctor has encouraged and abetted the plaintiff's condition; (3) the doctor's need to exercise more care because of his knowledge of *240 Cindy's condition; and (4) the application of the last clear chance doctrine.
A detailed narrative of the events leading up to Cindy's overdose is relevant to our consideration of the assigned errors. The testimony of the mother, Billie Argus, indicates that Cindy left school in the ninth grade at age 16. She had truanted periodically over the last two years, hiding the fact from her mother. She moved in and out of the home from age 17 on, sharing apartments with boy friends and with a girl friend. During the last year of her life she primarily lived in the family's apartment. The mother caught Cindy smoking marijuana when she was 14 years old.
Cindy was introduced to Dr. Scheppegrell by a friend, Denise. Dr. Scheppegrell admitted to prescribing tuinal, preludin and vallium. He testified that Cindy told him she was a model and wanted medication to maintain her weight at 97 pounds. The preludin acted as an appetite suppressant, while tuinal calmed her down enough to sleep. From time to time she complained of being nervous, for which the doctor prescribed vallium. The doctor denied detecting any indications of drug abuse. Whether or not Cindy was using other drugs or obtaining drugs from other physicians is uncertain from the record, as the mother denied previous testimony by deposition regarding Cindy's obtaining drugs from other physicians and reporting to hospital physicians that Cindy used dilaudid, demoral, and librium as well as tuinal, preludin and vallium. She denied also telling the physicians that Cindy abused drugs three to four years. The mother does admit to being aware that Cindy abused drugs at least from the time she began seeing Dr. Scheppegrell. On October 1, 1976 Cindy was picked up by the police and treated at East Jefferson Hospital for a possible overdose of barbituates. Mrs. Argus reported frequently searching Cindy's purse for pills sending her to bed to sleep off being "loaded", and making appointments that Cindy did not keep at the methadone center. She also noticed "track marks" on Cindy's arms.
Sometime within the month prior to Cindy's overdose Mrs. Argus telephoned Dr. Scheppegrell because Cindy began having seizures. She asked him not to prescribe more pills, to which he agreed. Cindy then visited Dr. Scheppegrell on August 15, 1977. He testified that he wanted her to discontinue taking the drugs because her mother informed him she was abusing them, but Cindy explained that a girl friend, not her mother, had made the call. She insisted she had to continue the drugs so that she could be a model and needed the prescriptions to tide her over until she located another doctor. He gave her prescriptions for 50 preludins and 50 tuinals. These are the pills with which Cindy overdosed.
On August 17, 1977 Cindy came home around 1:30 or 2:00 p.m., having spent the night with a boyfriend named Ben. They had had a fight and Cindy appeared depressed. The mother assumed Cindy was loaded on pills or drunk and told her to go to bed, which she did unaided. Cindy awakened, bathed, and called a friend named Mark. When he arrived at the house Mrs. Argus asked him to check Cindy's purse for pills, which he did when Cindy's back was turned. He then tossed two bottles of pills to Mrs. Argus who was seated on the sofa. They left, and she put the pills in her own dresser drawer where she kept aspirin and other medicines. She noted there were only a few pills in the preludin bottle but the tuinal bottle was 3/4 full. Cindy knew of Mrs. Argus's habit of putting medications in her dresser drawer. Thirty minutes later Cindy and Mark returned. Mark said she was loaded or drunk and left. Mrs. Argus sent Cindy to bed, then left to follow her husband downstairs to the manager's apartment, and asked Lisa, Cindy's 12 year old sister, to watch her. About an hour later, possibly about 8:30 p.m., Lisa came down to tell her parents Cindy had awakened. Very soon thereafter Lisa returned to tell them Cindy had swallowed the whole bottle. The mother testified she ran upstairs and found Cindy unconscious. She called Dr. Scheppegrell and on his advice she and Mr. Argus *241 rushed Cindy to Charity Hospital, arriving there at 9:25 p.m. Cindy did not respond to treatment, remained comatose, and died September 19, a month later.
The issues before us are complex and can best be analyzed in terms of duty-risk. We first ask whether Dr. Scheppegrell's prescribing of drugs in a negligent manner constituted a breach of a duty owed to the plaintiff Cindy to protect her against the particular risk of harm to which she was exposed and which caused her death. Ronstadt v. Begnaud Motors, Inc., 427 So.2d 911 (La.App. 3rd Cir.1983). Clearly, from Dr. Scheppegrell's own testimony and that of the plaintiffs' expert, Dr. Juan Lertora, Dr. Scheppegrell prescribed more of two dangerous drugs over a prolonged period of time than is safe. He failed to keep track of the frequency of prescriptions and excused it on the basis of careless record keeping.
Dr. Juan Lertora, a professor in the Tulane School of Medicine, departments of medicine and pharmacology, stated first that there was no valid medical reason for prescribing a combination of tuinal and preludin together. We note that the stated reason for prescribing preludin was weight control of a patient five feet six inches tall weighing 97 pounds. Secondly, a patient taking preludin over a period of time is likely to become psychologically dependent on the drug while a patient taking tuinal is likely to become psychologically and physically dependent on it. He pointed out further that persons taking barbituates, of which tuinal is one, may develop a tolerance, in that they require higher doses to induce sleep but at the same time they do not develop a tolerance to the potential lethal effects. Additionally, the use of such a drug can alter consciousness so that the user cannot judge how much is taken.
Based on these facts the jury found that Dr. Scheppegrell was negligent and that his negligence was a proximate cause of Cindy's death. We agree without reservation. Indeed it is difficult to imagine a more blatant disregard of duty by a doctor towards his patient. Considering the known effects of these drugs and the frequency of prescription, any sensible person can predict that this course of action leads to addiction, not treatment. The testimony of the doctor in excuse of his actions is not just incredible, it is ridiculous. The duty Dr. Scheppegrell owed toward his patient was to use due care in avoiding the harmful effects of a controlled dangerous drug. Instead his disregard of that duty caused her death.
However the jury also found Cindy guilty of contributory negligence. There is sufficient evidence to support this verdict and we cannot say the jury is clearly wrong.
The appellee postulates that Cindy intentionally chose to end her life. Dr. Lertora testified that from the medical records it would be impossible to determine whether the overdose was accidental or was a suicide. The appellant alleges that the overdose was accidental, brought about by the helpless addiction which Dr. Scheppegrell aided and abetted. The appellee rebuts this allegation by pointing out that there is no testimony indicating that Cindy was unaware of what she was doing. We note in the mother's testimony that on the fateful day, although she was "loaded," Cindy was able to undress for bed; she telephoned a friend, bathed, and dressed; and she went back to bed unaided when she returned after being out 30 minutes. The mother reported she was very depressed that day, but did not testify as to previous periods of depression. Nowhere are there comments regarding her mental condition or behavior indicating confusion. The jury was not asked whether this tragedy resulted from an intentional act of suicide or from an accident caused by her drug-induced state of mind that she could not judge amount. There was no interrogatory addressed directly to this issue. The jury resolved this issue by finding Cindy contributorily negligent and that negligence to be a proximate cause of her death. This finding negates an accidental overdose. In further support of that conclusion, we note that Cindy's mother had taken the pills away and placed *242 them in her drawer. Certainly Cindy deliberately sought them out and it is reasonable to conclude that she deliberately took the whole bottle.
Nevertheless conceding that Cindy's behavior was negligent, labelled "victim fault" under the duty-risk analysis, we must consider the complicated issue of whether it constituted a bar to recovery under the set of facts at hand. We have no case law involving an accident of this sort, resulting allegedly from the prolonged use of drugs. The appellants analogize Cindy's position to that of an intoxicated person, who is unable to take care of herself, or to a child, and who requires greater caution on the part of others. Gouzien v. Feraci, 2 La.App. 115 (1925). In both inebriation and drug addiction the person has voluntarily taken on the problem but reaches a point where he is no longer in control. In the recent case of Garcia On Behalf Of Garcia v. Jennings, 427 So.2d 1329 (La. App. 2nd Cir.1983) there is an excellent discussion of the duty of those furnishing intoxicating liquor for damages to intoxicated persons. That case involved the accidental drowning of a minor boy for whom some adults had bought liquor, encouraged him to drink to the point of intoxication, and then let him out of their car on an incline from which he fell into a bayou. While the case was an appeal from an exception of no cause of action and the court could not make a determination of all of the issues, it found that:
"The defendants had a duty not to purchase liquor for the minor and furnish it to the minor. Having done so the defendants further had the duty to exercise some degree of control and protection for the minor's safety. Analogizing from the Lee Pence, Thrasher, and Sanders cases, the defendants certainly had a duty to refrain from affirmative acts which placed the intoxicated minor in peril, and they allegedly violated this duty by taking the minor to a point near the bayou and allowing him to get out of a car at a dangerous place.
"The allegations of the petition viewed in the light most favorable to plaintiffs show a violation of duties owed by the defendants to the minor, which duties encompassed the risk of accidental injury to the minor of the nature alleged in this case. That the breach of duties was a cause in fact of the injury is clear because, under the allegations made, the accident would not have happened but for the actions of the defendants in furnishing the liquor, encouraging its consumption, and taking the minor to a place of danger.
"The decedent's contributory negligence or assumption of the risk in voluntarily getting intoxicated does not necessarily bar his parents recovery for his wrongful death because the duties breached by the defendants are designed to protect a minor from his own foibles, negligence, and fault arising out of the consumption of alcoholic beverages and resulting intoxication." Garcia, supra, at 1333.
Alston Johnson, in Comparative Negligence and the Duty/Risk Analysis, 40 La. L.Rev. 319 (1980) discusses victim fault at length and points out that whether or not it is a bar to recovery will be decided on a case by case basis:
"These three decisionsBaumgartner, Boyer, and Rueare remarkable departures from the rule that the contributory negligence of a plaintiff will constitute an absolute bar to recovery. Thus, we can only say that sometimes plaintiff's contributory negligence will absolutely bar recovery, and sometimes it will not. But the decision as to whether it will or will not has clearly moved from neatly-defined categories of exceptions (last clear chance, momentary forgetfulness, sudden emergency, and the like) into the broad consideration of whether defendant's duty should as a matter of law extend to the protection of a careless plaintiff. If various policies of the law require that it should so extend, then contributory negligence should not be a bar to recovery; otherwise, the very policies of the law that dictated the scope *243 of defendant's responsibility would be defeated."
The cases cited above, and indeed all cases involving intoxicated persons, concern traumatic accidents, most of them automobile accidents, and not a chemically induced illness. Had the doctrine of comparative negligence been in effect at the time the facts of this case occurred, a resolution of the problem might have been easier. Under the law current in 1977, the issue is unique and a close question.
We have related the facts as we perceive them to be as to the victim and as to the responsibility of the tort feasor. The problems of drug abuse and usage amongst our youth are chronicled in our daily news and are public knowledge. Under the facts of this case we conclude that the defendant's duty should as a matter of law extend to the protection of a careless victim. However the activity of this victim goes beyond carelessness. Although no interrogatory was addressed to the jury except contributory negligence, we conclude the evidence preponderates that Cindy deliberately and knowingly took the overdose of pills and that the defendant's duty does not extend that far.
The plaintiffs raise a related issue which we feel should also be addressed. The issue is referred to indirectly by the plaintiffs in terms of last clear chance. They argue that Dr. Scheppegrell had the last opportunity to prevent the overdose by refusing to give Cindy pills on August 15, after her mother objected. Thrasher v. Leggett, 373 So.2d 494 (La.1979). The defendant argues that the doctrine did not apply because he had neither the time nor the means to prevent the incident. Gregoire v. Ohio Casualty Insurance Co., 158 So.2d 379 (La.App. 1st Cir.1963). In other words, Dr. Scheppegrell was not present to restrain Cindy from swallowing the pills or administer immediate aid on August 17. Instead, he pointed out that Cindy's mother was in the home and could have disposed of the pills, or at least placed them somewhere unavailable to Cindy.
It is obvious that had not the doctor prescribed the drugs on August 15, Cindy could not have overdosed on those drugs from that prescription. It is equally obvious that had Cindy's mother destroyed the drugs on August 17 that Cindy could not have overdosed on those drugs. Although an interrogatory was addressed to the jury relative to the mother's contributory negligence (she and Cindy's father were the plaintiffs), it was not answered because of finding Cindy negligent.
Mrs. Argus admitted she had possession of the pills and had merely placed them in a drawer to which Cindy had access and which she knew was her mother's hiding place for other pills. Mrs. Argus' having Cindy's friend retrieve the bottles and her previous searching of Cindy's purse indicate she was well aware of the danger. It is inconceivable that she could not have taken further precautions of destroying the pills or securing them safely. We rule that the defendant did not have the last clear chance.
For these reasons, we find no reversible error in the judgment appealed from and we affirm it at appellants' costs.
AFFIRMED.