373 So.2d 237 (1979)
Dudley Joseph CAMPBELL, Plaintiff-Appellant,
v.
Edmond MOUTON and Pete Reaux, Defendants-Appellees.
No. 7061.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
*238 D. Warren Ashy, Lafayette, for plaintiff-appellant.
J. Barry Mouton, Lafayette, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
STOKER, Judge.
This is a suit for personal injuries allegedly sustained by the plaintiff as a result of a barroom brawl. Plaintiff, Dudley Campbell, alleges that he was negligently, recklessly, and wantonly cut and stabbed while at the Starmist Lounge by defendant, Pete Reaux, an employee of the lounge. Plaintiff also made the owner of the lounge, Edmond Mouton, a defendant based upon the assertion that Reaux was acting within the course and scope of his employment when he injured the plaintiff. Trial of this case was begun before a jury. At the close of plaintiff's case, the trial judge granted the defendants' motion for a directed verdict and dismissed the case. From this dismissal, plaintiff perfected the present appeal. The issues posed on appeal are:
(1) Did the trial judge apply the correct standard in granting defendants' motion for a directed verdict; and
(2) Was the plaintiff's evidence in this case so insubstantial that the case should have been removed from the jury?
STANDARD FOR DIRECTED VERDICTS
The motion for directed verdict is a common law procedural device which has only recently found its way into the law of Louisiana through Article 1810 of the Code of Civil Procedure. The purpose of the directed verdict is that "it serves judicial efficiency by allowing the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict." Civil ProcedureWork of Louisiana Legislature for 1977 Regular Session, 38 La.L.Rev. 152, 157 (1977); See also Williams v. Slade, 431 F.2d 605 (5th Cir. 1970).
*239 Article 1810 of the Code of Civil Procedure, which incorporates the directed verdict into Louisiana Law reads in pertinent part as follows:
A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
In granting defendants' motion for a directed verdict in this case, the trial judge gave oral reasons, which read in part as follows:
The law of the State of Louisiana is that the burden is on the person alleging the occurrence of an incident to prove each essential element of his case by what is known as a preponderance of the evidence. In this particular case, the allegation has been made that the defendant, Peter Reaux, did injure the plaintiff, Dudley Campbell, by stabbing him, thus allegedly rendering him disabled from pursuing a former employment as a welder. The Court, after hearing the evidence that was introduced by the plaintiff as to the question of the stabbing, has reached the conclusion that the plaintiff has failed to establish his allegations by a preponderance of the evidence. (Tr. 371-372)
Plaintiff asserts that the trial court erred in applying a standard of "a preponderance of the evidence" in deciding defendants' motion for a directed verdict. Article 1810, itself, establishes no standard to be used in determining a party's right to a directed verdict. Plaintiff argues that the correct standard in ruling upon such a motion is the same as the one applied in Federal Courts, since Louisiana adopted verbatim Section 50(a) of the Federal Rules of Civil Procedure as our Article 1810A. See: Civil ProcedureWork of the Louisiana legislature for 1977 Regular Session, supra, at p. 157.
We conclude that the plaintiff is correct in his contention that the trial court applied an incorrect standard in granting the defendants' motion. Moreover, since the source of LSA-C.C.P. article 1810A is the Federal Rules of Civil Procedure, we believe that the correct standard is that applied in the Federal Courts. See Madison v. Travelers Insurance Company, 308 So.2d 784 (La.1975). This standard is succinctly stated in the following language penned by the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969):
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
SUFFICIENCY OF PLAINTIFF'S EVIDENCE
Having adopted the above quoted federal standard as our own, we must now consider whether the result reached by the trial judge was correct notwithstanding his failure to apply the correct test. This court is in a position to make such a determination because we have a complete record of the plaintiff's evidence before us and because evaluations of credibility have no *240 place in a decision on a motion for directed verdict. Greyhound Corp. v. Dewey, 240 F.2d 899 (5th Cir., 1957). Making credibility evaluations is one of the primary duties of a jury and the trial court may not take this duty from the jury unless the party opposing the directed verdict has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. See Boeing Co. v. Shipman, supra; Dreiling v. General Electric Co., 511 F.2d 768 (5th Cir., 1975). The trial judge concluded that the plaintiff had failed to prove that he had actually been stabbed by Reaux.
After a thorough review of the plaintiff's evidence conducted in the light most favorable to the plaintiff and drawing all reasonable inferences most favorable to him, we conclude that the defendants' motion for a directed verdict should be denied. We are of the opinion that the facts and inferences do not point so strongly and overwhelmingly in favor of the defendants that reasonable and fair-minded men could not arrive at a verdict in favor of the plaintiff.
The record in this case, viewed in the light most favorable to the plaintiff, reflects the following. The incident which gave rise to this suit occurred on the night of February 26, 1977, at the Starmist Lounge, which is owned by defendant Edmond Mouton. On that night, plaintiff was present at the lounge with a friend, Nolan Becker, for the purpose of imbibing alcoholic beverages. Peter Reaux, a defendant herein, was working as a bartender at the lounge on the night in question.
While plaintiff was at the lounge, a fight erupted between two persons who are not parties to this lawsuit. Plaintiff was standing in close proximity to the fight and keeping a vigil over the happenings. As part of his job, Reaux came out from behind the bar to attempt to break up the fight. In the process of pulling the participants apart, Reaux bumped into or elbowed the plaintiff. As a result of this contact, Reaux and the plaintiff exchanged punches. This fight lasted a very short period of time before it was broken up by a bystander. After it was broken up, Reaux returned to his place behind the bar and plaintiff resumed his drinking.
Shortly thereafter, the defendant made a motion for the plaintiff to accompany him outside. Once outside, Reaux and the plaintiff again engaged in a fight. This fight was broken up by the Abbeville police, who had been called for the purpose of silencing the initial disturbance inside of the lounge. At this time, the police brought the plaintiff to the police station for questioning. It was while the plaintiff was at the police stationapproximately 45 minutes after the last altercationthat he first realized that he had been stabbed. The testimony of Dr. Harold Crackower, who examined the plaintiff on February 28th, established that plaintiff had at some time received lacerations to his back and left arm as well as a puncture wound near his left elbow.
The trial judge in dismissing plaintiff's case obviously believed that the plaintiff had failed to prove that it was the defendant, Peter Reaux, who had inflicted the apparent knife wounds to the plaintiff. From his oral reasons, it can be ascertained that the factors influencing this decision by the trial judge were that: (1) the plaintiff had failed to realize that he was cut until approximately 45 minutes after the fight had ceased; (2) the plaintiff was unable to say who or what had cut him; and (3) the witnesses called by plaintiff gave widely varying testimony.
While all of the above considerations of the trial judge are supported by the record, we are of the opinion that there is evidence which, when viewed in the light most favorable to the plaintiff, could be sufficient to convince a reasonable and fair-minded man to return a verdict in favor of the plaintiff.[1] Circumstantial evidence can *241 be sufficient to prove any element of a civil case. Vonner v. State, Department of Public Welfare, 273 So.2d 252 (La.1973). The test of the sufficiency of circumstantial evidence is that, taken as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
While it is true that neither the plaintiff nor any other witness was able to state that the defendant, Peter Reaux, did in fact stab him, there is overwhelming evidence that Reaux did have a knife in his possession on the night in question. This evidence includes the testimony by the plaintiff and two witnesses to the fights, Dudley Guidry and Riley Trahan, that they saw Reaux holding a knife immediately after the first fight between Reaux and the plaintiff had ceased. However, the evidence which perhaps most strongly supports the hypothesis that Reaux stabbed the plaintiff is the following testimony of Donald Miller, one of the police officers who investigated the incident, to wit:
Q. Did you search him [Pete Reaux] for a weapon?
A. Not until after he was at the police station.
Q. You searched him for a weapon then?
A. Well, when we arrested himfor protective measures before we arrested him.
Q. And did you find a weapon on him?
A. Yes, sir, I did.
Q. You found the knife that you referred to?
A. A knife, yes, sir.
Q. Okay. That knife was there and you said it was taken into your custody?
A. Yes, sir.
Q. And it was held as evidence for a potential criminal matter, is that correct?
A. After statements were given that he had used this knife in the perpetration of this crime.
Q. And so you said you retained the knife for criminal purposes?
A. That is correct.
Q. Did you take this knife and have it examined by a laboratory?
A. No, sir, we did not.
Q. Did you make any observation as to whether there was any blood on the knife or other(Interrupted)
A. I did notice that, yes, sir.
Q. What did you notice?
A. I noticed there was some blood on the blade.
Hence, there is substantial evidence upon which the jury could base a finding that Peter Reaux did in fact stab the plaintiff.[2]
The trial judge's other two apparent reasons for granting defendants' motion, i. e. the testimony of the plaintiff that he did not realize that he had been cut until 45 minutes after the fight and the contradictory testimony of plaintiff's witnesses, in actuality address themselves more to the weight to be given such testimony. However, it must be noted that Dr. Crackower did testify that it is not an unusual occurrence for a person to be cut and not to realize it until some time after the incident. Hence, while on first impression plaintiff's testimony that he did not immediately realize he had been cut might appear questionable, it could well be explained by the testimony of Dr. Crackower. With reference to the contradictory nature of the testimony, the jury could well choose to believe that this resulted from the stressful nature of the incident and the celerity in which it occurred. In any event, credibility evaluations are within the province of the jury and should never form the basis for directing a verdict.
*242 For the foregoing reasons, the judgment of the district court granting the defendants' motion for a directed verdict is reversed and the motion is denied. The case will be remanded for a new trial not inconsistent with the views expressed herein. Costs of this appeal are assessed to the defendants-appellees.
REVERSED AND REMANDED.
NOTES
[1] This statement is not to be taken as an expression by this court on the merits of this case. It is simply our view that, on the evidence thus far adduced, a reasonable and fair-minded jury might decide the issues in favor of either party.
[2] This is a civil case and in such cases the burden of proof which the plaintiff must carry is quite broad. Unlike criminal cases (LSA-C. Cr.P. art. 804), in which facts must be proved beyond a reasonable doubt, in civil cases it is sufficient if, taking the evidence as a whole, such proof shows that the fact of causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., supra.