DOUCET, Judge,
dissenting.
The majority opinion in effect holds that the plaintiff in a redhibition action may not establish his case by lay testimony. Inasmuch as I believe the buyer established a prima facie case by showing normal use in the intended manner, thereby precluding a directed verdict, I respectfully dissent.
Preliminarily, whether the plaintiff was to prevail on the merits after full adjudication whereat the defense could produce expert testimony concerning the fitness of their fiberglass hull is of no moment when addressing the propriety of a directed verdict under the circumstances herein. It suffices that plaintiff established a prima facie case by lay testimony.
Plaintiff purchased the boat solely for fishing. He took excellent care of the boat and had no problems with it until the latter part of May or early part of June 1981, when he and Larry Rhosto had gone on a fishing trip to Toledo Bend. Both Rhosto and plaintiff candidly admitted that on that particular trip to Toledo Bend, they undoubtedly bumped into and eased around stumps and underbrush in fishing the shallow arms of the lake. However, Rhosto, who was driving the boat, said that he was very careful in these areas where he knew there were stumps and underbrush and that he handled the boat in negotiating these areas just as he would his own boat, that is, by going very slow and idling through these areas. Rhosto and plaintiff testified that they did not hit any underwater object with any force or while going at any speed. Plaintiff admitted he has at times operated the boat over submerged stumps and logs — a forseeable usage. When they got home from Toledo Bend that evening, plaintiff observed two cracks in the hull of the boat on the right front side. According to plaintiffs, one crack measured about eight *1320 inches and the other about twelve inches. The cracks ran parallel and lengthwise of the boat.
Thereafter, Dubois returned the boat to Ed Cheek Marine. Steve Berry, the manager, examined the cracks. He took out his pocket knife and actually stuck it through each crack in the fiberglass hull. Cheek Marine returned the boat to the manufacturer for repair. When Mrs. Dubois talked to the manufacturer’s plant manager, while the boat was being repaired in Arkansas, she was assured that the hull was fixed and that it would never crack in the same area again.
The boat was returned approximately three months later however, because hunting season was beginning, plaintiff did not use his boat again until March 1982. During this time he kept it covered under his carport. The next time he used the boat was in March when he and Randy Skains participated in a bass tournament on Cane River. Plaintiff was very familiar with the particular area of Cane River that he fished. Plaintiff testified that on that day on Cane River, not only did he not run into any stump or submerged object while going at any speed, he did not even bump into or slide over a submerged object while going very slow or idling. The next day while hooking up the trailer lights to his truck, he found another crack in the exact same area of the hull as the two previous cracks however, this time the crack ran the width of the boat and was 2½ to 3 inches long. Wood was found lodged in the crack.
Subsequently, plaintiff returned the boat to Ed Cheek Marine to have it fixed. Mr. Berry again inspected it, took his knife out and was able to stick the blade through the crack in the hull. Plaintiff left the boat at Ed Cheek Marine, but the manufacturer refused to make any further repairs without payment. Mr. Dubois has been without the use of the boat ever since.
La.C.Civ.Pro. Art. 1810 provides for directed verdicts at the close of plaintiff’s evidence. The standard for application of said article was set forth by this court in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979) as follows:
“Moreover, since the source of LSA-C. C.P. article 1810A is the Federal Rules of Civil Procedure, we believe that the correct standard is that applied in the Federal Courts. See Madison v. Travelers Insurance Company, 308 So.2d 784 (La. 1975). This standard is succinctly stated in the following language penned by the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969):
'On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.’ ”
In considering a Motion to Dismiss after plaintiff had presented his evidence, the trial judge must weigh and evaluate all of the evidence presented up to that point and grant the dismissal if plaintiff has not established proof by a preponderance of evidence. Standard Machine & Equipment Co. v. Southern Pacific Transportation Co., 410 So.2d 842 (La.App. 3rd Cir.1982). Stated otherwise, a directed verdict may be granted only if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes reasonable men could not arrive at a contrary verdict. Oppenheim v. Murray Henderson Undertaking Co., Inc., 414 So.2d 868 (La.App. 4th Cir. 1982); Campbell v. Mouton, supra. See also: Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3rd Cir.1983). In determining the propriety of a motion for summary judgment, facts and inferenc *1321 es must be viewed m a light most favorable to plaintiff. Grimes v. Stander, 394 So.2d 1332 (La.App. 1st Cir.1981); Campbell v. Mouton, supra.
Where the alleged defect manifests itself over three days after the sale is perfected the burden is on the plaintiff to establish that the defect existed at the time of the sale. La.Civil Code Art. 2530. However, it is not necessary that the plaintiff prove the exact cause of the defect; he need only show that a defect in fact existed. Domingue v. Whirlpool Corp., 303 So.2d 813 (La.App. 3rd Cir.1974); Gamble v. Bill Lowrey Chevrolet, Inc., 410 So.2d 1155 (La.App. 3rd Cir.1981); Edelman Systems, Inc., v. Capitol GMC, Inc., 345 So.2d 99 (La.App. 1st Cir.1977); Moreno’s, Inc. v. Lake Charles Catholic High School, 315 So.2d 660 (La. 1975).
The plaintiff is not required to prove his case by expert testimony; a prima facie case is established upon showing that the defect appeared during normal use and that the thing sold was properly maintained. Rey v. Cuccia, 298 So.2d 840 (La.1974); Magee Motors, Inc. v. Moran, 393 So.2d 757 (La.App. 1st Cir.1980). As stated in Clinkscales v. Superior Pontiac-GMC, Inc., 365 So.2d 895 (La.App. 4th Cir.1978):
“Our settled law is that a plaintiff need not introduce expert testimony to prove the underlying cause of an alleged malfunction, but need only prove the defect or malfunction existed at the time of the sale.2 In Mattes v. Heintz [69 So.2d 924 (La.App.1954) ],3 this court said:
“... The language of LSA-C.C. art. 2530 does not mean that the buyer must prove by eyewitnesses the existence of the vice before the sale, or that such a vice was known to exist. The court may take into consideration such surrounding circumstances as may appear and deduce therefrom the fact of the existence of the vice prior to the sale.”
The Supreme Court in Rey v. Cuccia,4 made the following statements:
“If the defect appears within three days following the sale, it is presumed to have existed before the sale, Article
2537. However, even where the defect appears more than three days after the salé (as here, when it appeared on the second day of use, but ten days after the sale), if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale.” (footnotes omitted)
Thus a reasonable inference may arise, in the absence of intervening cause or other explanation, that the defect existed at the time of the sale. Sweeney v. Vindale Corp., 574 F.2d 1296 (5th Cir.1978). Plaintiff was not required to prove by expert testimony that the boat was built improperly.
Viewing the facts in a light most favorable to appellant, as required by Campbell and progeny, I believe that the plaintiff established a prima facie case. He and his fishing partners testified that they did not hit any underwater object with any force or while going at any appreciable speed. All parties testifying indicated that plaintiff took good care of the boat. Appellant established that the defect appeared while using the boat in the intended manner under conditions of normal use. Defendant contends that the cracks in the hull were the result of plaintiff’s abuse and that the craft exceeded manufacturing standards, however, reasonable minds could reach conflicting results from the evidence presented thus far in the proceedings. Accordingly, the directed verdict should be reversed and the case remanded for further proceedings.
For the reasons assigned hereinabove, I respectfully dissent.
DISSENT.