449 So.2d 164 (1984)
Audrey Mae MUSE
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. CA 1202.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1984.
Writ Denied June 1, 1984.
*165 Floyd F. Greene, New Orleans, for defendant-appellee, New Orleans Public Service, Inc.
Matthew B. Collins, Jr., Schafer & Schafer, New Orleans, for plaintiff-appellant, Audrey Mae Muse.
Before REDMANN, GARRISON and WARD, JJ.
WARD, Judge.
Audrey Muse fell and injured her left ankle as she was leaving a New Orleans Public Service bus at the corner of Dumaine and North Miro Streets. Ms. Muse filed suit against NOPSI and requested a jury trial. At the close of her case, NOPSI moved for a directed verdict, and the Trial Judge granted it. Ms. Muse appeals that verdict.
We reverse in light of the facts and the law.
To prove her case, Ms. Muse presented three witnesses: herself; the driver of the bus; and her treating physician. She testified that she was a school teacher, riding the bus to work on the morning of the accident. Although she usually rode to school in a co-worker's automobile, she rode the bus to work "ten or fifteen times a year" and on those occasions she got off at the North Miro and Dumaine bus stop where the accident occurred. On the morning of the accident, a car was parked in the bus stop zone, making it impossible for the driver to pull the bus to the curb, and the driver stopped and let Ms. Muse and other passengers off in the street, a car's width or about ten feet from the curb. Ms. Muse was carrying a purse and a school bag with a shoulder strap, leaving one hand free as she stepped from the bottom step of the bus onto the street. She testified the heel of her shoe caught in an "indented space in the street", and she fell, injuring herself.
The driver of the bus, Woodrow Manego, was called by Ms. Muse as a witness under the rule of court which permits cross-examination of adverse parties and their agents. He had been a NOPSI driver for fourteen years. At the time of Ms. Muse's accident, he had been driving the same route about two months and his recollection was that the accident occurred during his second trip on the route that morning. He also recalled that he was unable to pull the bus completely to the curb because of the parked automobile and that the street was "bumpy". However, he testified that there were no holes where the passengers disembarked and that, "[he] picked that spot because it was the safest part of the street without going into the intersection and staying as close to the auto as possible." Additionally, he testified that Ms. Muse had taken two or three steps after leaving the bus before she fell.
*166 Ms. Muse called only one other witness, Dr. Calvin M. Johnson, who testified as to her injuries. After she rested her case, NOPSI moved for a directed verdict and the Trial Judge granted it. We believe the Trial Judge erred.
Campbell v. Mouton, 373 So.2d 237 (La. App. 3rd Cir.1979), set the standard for directed verdicts which has been recognized by other Louisiana appellate courts:
[The statute allows] the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict.
The court, in Campbell, also approved the Federal standard, quoting Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969):
On motion for directed verdict and for judgment notwithstanding the verdict that Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions [sic] is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. 373 So.2d at 239.
The question in this case, however, is not the standard to be applied, but whether the evidence or lack of evidence supports a directed verdict. When considering the evidence before granting the directed verdict, the Trial Judge stated:
plaintiff has not proven his [sic] case from the evidence that is required in order to prove a case of this type, and a directed verdict is issued that the negligence of Public Service is not shown in that instance.
We, however, believe that before the Trial Judge grants a directed verdict he must first consider the applicability and consequences of the presumption that a public carrier is negligent when a fare-paying passenger is injured.
Courts have consistently held that a common carrier operating a public conveyance owes a special duty to its fare-paying passengers. Because of this special duty, a carrier is presumed negligent when a passenger proves an injury occurred while she was under the care of the public carrier. This presumption shifts the burden to the carrier to prove that it was not negligent. Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963); McDermott v. New Orleans Public Service, Inc., 420 So.2d 993 (La.App. 4th Cir.1982). In this instance, when Ms. Muse proved she was a fare-paying passenger, and injured while under the care of NOPSI, the presumption of negligence has the procedural consequences of shifting the burden to NOPSI to prove that it was not negligent.
And, as a result of the shifting of the burden of proof, Ms. Muse was relieved of the obligation of proving negligence. Ms. Muse, therefore, proved all that was necessary to defeat NOPSI's motion for a directed verdict.
This is not to say NOPSI would never be entitled to a directed verdict at the close of the plaintiff's case. It may of course be entitled to one if the plaintiff's case in chief showed that she was not a fare-paying passenger, or that she was not in fact injured, or that the injury occurred after she reached her destination, etc.all facts which would destroy the presumption which insulates the plaintiff from a directed verdict at the close of her case.
Reversed and remanded for a new trial.
New Orleans Public Service, Inc. must pay the cost of this appeal.
REVERSED AND REMANDED.