KING, Judge.
This appeal presents for our consideration whether or not the trial court was correct in granting a directed verdict in favor of defendants at the conclusion of a trial on the merits.
Jimmy Marcantel (hereinafter plaintiff) filed suit against Frank Breaux, Jr., Cameron Offshore Boats, Inc. and Highlands Insurance Company (hereinafter defendants) alleging that the defendants were responsible for damages caused by a speeding crewboat in Grand Bayou in Cameron Parish, Louisiana that created an excessive wake which sank his boat. Plaintiff sought damages and lost income totaling , $30,929.47 resulting from the sinking of his boat. Defendants answered and filed a motion for summary judgment which was denied. A trial on the merits ensued. At the close of plaintiffs evidence, defendants moved for a directed verdict. The court deferred ruling on defendants’ motion at that time. After the completion of the defendants’ evidence, the court granted defendants’ directed verdict and ordered plaintiff’s suit dismissed at his cost. A written judgment was signed and plaintiff timely devolutively appealed. We affirm.
FACTS
On August 19, 1986, plaintiff anchored the Miss Mandy, his 8' X 20' aluminum shrimping boat, approximately 500 feet from where the mouth of Grand Bayou enters into Calcasieu Lake in Cameron Parish, Louisiana. There were three other shrimping boats anchored in close proximity to the Miss Mandy and all four boats were anchored together (hereinafter the anchored boats) in a square pattern. The Miss Mandy was anchored closest to the mouth of Grand Bayou with the Captain Black anchored on her left, the Miss Margie anchored to her rear, and the Barbara Ann anchored at her left rear, behind the Captain Black. The Barbara Ann was the largest of the four boats. The boats were all anchored in a similar fashion with one anchor on the bow and two anchors on the sterns of each boat.
Plaintiff testified that he was aboard the Barbara Ann, haying coffee with Wade Wall and Junior Breaux at the time that his boat sank. Wall and Breaux were sitting below window level on the couch inside the cabin of the Barbara Ann at the time this accident occurred. Plaintiff claimed that he was the only person to see a crewboat enter into the mouth of the bayou because he was the only person inside the cabin who was standing. Both plaintiff and Wade Wall, the owner of the Barbara Ann, described Wall’s boat as having good visibility, with windows all the way around the cabin. Plaintiff admitted that he had his back to his boat, but “... for some reason, [I] turned and looked and when I looked, I seen my ice chests floating.”
*128 Plaintiff testified that he saw a crewboat in the lake, while it was approaching the anchored boats, but could not recall the size of the wake it was making. Breaux claimed that he observed a wake from the crewboat while it was still out in Calcasieu Lake approaching Grand Bayou. Breaux could not say whether it was the Elizabeth McCall that passed the anchored boats or what size wake was being made by the crewboat when it passed the anchored boats. Wall claimed that he noted that the boat which passed the anchored boats caused his boat to rock. After it was discovered that plaintiffs boat sunk the plaintiff, Breaux, Wall, and others raised plaintiff’s boat onto the bank of the bayou. At that time a crewboat again passed and entered the lake. Although all three men testified about seeing this crewboat, none could testify positively as to the colors of the hull, the height, the decks, the trim, etc. of the crewboat that passed the anchored boats. Plaintiff testified on direct examination that the crewboat he saw after his boat sank was blue and had the name Elizabeth McCall written on its side. However, on cross examination, he claimed the crewboat was blue and white, and then confessed that he really did not remember the color. Junior Breaux estimated that the crewboat was between 60 and 70 feet in length but he could not recall the general colors of the boat, nor did he notice the name on the boat. Wade Wall remembered the crewboat he saw after plaintiffs boat sank as being 48 to 50 feet in length, blue and white in color, and recalled seeing the name Elizabeth McCall written on its side. However, he testified that the hull was blue and the height and decks were white. This testimony was significant because defendants maintain that a boat named the Vicky P. was the one seen in Grand Bayou by the plaintiff, Wall, and Breaux on the day of the sinking of plaintiffs boat and that the Vicky P. caused the sinking of plaintiffs boat. The Vicky P. was also a blue and white boat approximately 50 feet in length. However, plaintiff, Breaux, and Wall thought the crewboat that passed, after plaintiffs boat sank, was the same crewboat that had passed before plaintiffs boat was discovered sunk.
There was a conflict in the testimony between plaintiffs version of his telephone conversation with defendants’ agent when he called defendant, Cameron Offshore Boats, Inc., to report the sinking. Plaintiff claims that several weeks after the sinking of his boat he spoke to a man named Frank, who told him that the Vicky P. sunk his boat. Defendants claim that there is no person in their office named Frank. James Bosarge, the manager of Cameron Offshore Boats, Inc., testified that he remembered speaking with plaintiff when he called to report the accident. Bosarge testified that plaintiff first called him on October 9, 1986 with news of the August 19, 1986 accident. Bosarge claimed to have checked the records of the Cameron Parish Sheriff’s Department on October 10, 1986 without finding an accident report concerning the Elizabeth McCall. Bosarge did, however, testify that he found an accident report stating that the Vicky P. had sunk a boat on August 19, 1986. The next time plaintiff called Bosarge was October 16, 1986, when he asked Bosarge whether defendants would settle his claim. When Bo-sarage suggested that the Vicky P. might be the boat responsible, he testified that plaintiff denied the possibility and said that he had spoken to his friends and they had decided that the boat that sank his boat was the Elizabeth McCall. Bosarge said that plaintiff told him at that time that the captain he saw on board the Elizabeth McCall had a beard. Plaintiff denies saying this. Frank Breaux, one of the defendants herein, was the captain of the Elizabeth McCall, and testified that he was the captain on board the Elizabeth McCall on the day of the accident but that he had never had a beard.
The Miss Mandy allegedly sank a little before noon on the day of the accident and plaintiff testified he reported the sinking of his boat to the Cameron Parish Sheriff’s Department by radio. The dispatcher’s log from the sheriff’s office shows the accident was not reported until 4:09 P.M. that day.
*129 LAW
In Louisiana, appellate courts have full and complete jurisdiction to review both the facts and the law. The appropriate standard for appellate review was set forth in Canter v. Koehring Company, 283 So.2d 716 (La.1973) and was later elaborated upon in Arceneaux v. Domingue, 365 So.2d 1330, at page 1333 (La.1978), where the court stated:
“We said the appellate court should not disturb this factual finding in the absence of manifest error. The difference is important. ‘Manifestly erroneous,’ in its simplest terms, means ‘clearly wrong.’ We said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong. Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).”
In ruling on a motion for a directed verdict, the Louisiana courts apply the identical standard used by the Federal courts. This court noted in Campbell v. Mouton, 373 So.2d 237 (La.App. 3 Cir.1979) that:
“This standard is succinctly stated in the following language penned by the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969):
‘On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence-not just that evidence which supports the non-mover’s case-but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.’ ” Campbell v. Mouton, 373 So.2d 237, at page 239 (La.App. 3 Cir.1979).
See also, Scherer v. Chaisson, 469 So.2d 510 (La.App. 3 Cir.1985); Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3 Cir.1983), writ den., 437 So.2d 1149 (La.1983).
The trial judge found that the crewboat that first passed the anchored boats was the Elizabeth McCall. After reviewing the evidence we find that reasonable and fair minded men in the exercise of impartial judgment might have reached a different conclusion and that the trial court was in error in determining that there was “... no question about the identity of the boat.” All of the testimony about the boat’s identity comes from three people, none of whom actually witnessed the actual sinking. Junior Breaux and Wade Wall were in the cabin of the Barbara Ann, seated below window level. Plaintiff, by his own admission, was standing but had his back turned during the actual sinking. There was no other evidence that the Elizabeth McCall sunk plaintiff’s boat and no eyewitnesses to testify that the Elizabeth McCall actually sunk the Miss Mandy.
Although there was testimony as to the name and colors of the boat seen in Grand Bayou after the sinking of Miss Mandy, the plaintiff finally admitted that he could not remember the colors of the crewboat, Junior Breaux did not notice, and Wade Wall remembered incorrectly. The facts and inferences in this case do not point strongly and overwhelmingly to the conclusion that the crewboat, the Elizabeth McCall, was responsible for the sinking of plaintiff’s boat. Reasonable minds could, ostensibly, have reached a different conclusion.
Plaintiff could not recall the size of the wake caused by the crewboat which passed before he discovered that the Miss Mandy had been sunk. Neither could Breaux or *130 Wall testified to the size of the wake made by the crewboat that passed before the Miss Mandy was discovered sunk.
On cross-examination, defendant’s counsel questioned plaintiff on the size of the wake made by the crewboat that first passed the anchored boats, as follows:
“Q. (Mr. Davis) Now, did you have a chance, Mr. Marcantel, as you were observing this vessel pass and before you realized that your boat had sunk, the size of the wake that it was putting out?
A. No, I can’t say that I did recall.
* * * * * *
Q. You don’t know what kind of wake it was throwing out?
A. I can’t recall, no sir.”
Junior Breaux testified on cross-examination that when the men first saw the crew-boat in the lake approaching the bayou and the anchored boats, none of them commented on her wake. He also admitted that the crewboat entered the bayou and passed about 100 feet from the anchored boats. Considering the bank on the other side, Breaux conceded that the passing crewboat was traveling as far away from the anchored boats as was possible and that the crewboat was as close to the other bank as it could get when it passed the anchored boats.
During Wall’s cross-examination, he admitted that he based his estimate of the size of the wake solely on the fact that he felt his boat rock when the crewboat first passed the anchored boats and that he did not personally observe the wake nor its size.
In his reasons for judgment the trial judge, granting the defendant’s motion for a directed verdict, stated that:
“However, the failure of the plaintiff’s case comes on the question of legal fault. There is no direct evidence that the wake of the ELIZABETH MCCALL was unreasonable. I point out that Mr. Millard Breaux observed the boat approaching and was impressed with the amount of fuel it was using, but he does not remember in conversation between those people on the BARBARA ANN any reference to its speed or the size of its wake. And neither seemed to be impressed after the passing of the BARBARA ANN. Mr. Wall did say that he thought his boat, being a rather wide bottom boat, rocked more than usual. I’m not so sure that ‘more than usual’ was the phrase he used, but he took note of its rocking. But he did not think it was extreme, because no one at that point in that congregation made reference to the size of the swell. The only thing that brought excitement to this group was when Mr. Marcantel noted some, up to as many as five minutes later, according to Mr. Millard Breaux’s testimony, that his boat now was under the water. There is a possibility there that perhaps it had sunk before the arrival of the ELIZABETH MCCALL, but I think that it’s reasonable to assume that the sinking resulted from the wake of the large vessel. Now, a boat under way cannot be expected to have an absence of any wake. I believe the testimony of Captain Breaux, that entering these shallow waters a 46 foot boat would have to go very slowly under any conditions. One explanation for this sinking may come from the anchoring procedures used by these fishing boats. In maintaining their positions for the particular fishing process, the fishing procedure they use, they require anchors on many points. I think Mr. Wall said he was anchored on four points, and Mr. Marcantel’s boat was anchored at least on three. A boat anchored on all points exposes itself to an inability to roll with swells. And a passing boat, such as the ELIZABETH MCCALL, is not the insurer of every other vessel along its line of passage. A vessel under way can assume that other vessels have not put themselves in such a precarious position that a minimal swell, somewhere six inches to one foot, would cause damage, much less a sinking. There is no showing that the standard of reasonable behavior or any other maritime duty has been breached in this instance. And so, for those reasons, the Court is going to grant the directed motion in favor of the *131 defendant and dismiss this suit at plaintiffs cost ...”
After reviewing the record concerning the issue of legal fault, we find that the trial court was not manifestly erroneous or clearly wrong in finding that there was insufficient evidence to find the defendants liable. Even assuming that the passing crewboat was the Elizabeth McCall, there was no proof that her wake was unreasonable, or that the wake caused the sinking of the Miss Mandy. The evidence corroborates the finding that the passing crew-boat was operating slowly and at the farthest possible distance away from the Miss Mandy.
For this reason the judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiff-appellant.
AFFIRMED.