GARRISON, Judge.
Plaintiff, Audrey Muse, filed this lawsuit against the defendant, New Orleans Public Service, Inc. (NOPSI), for damages allegedly resulting from an accident which occurred on April 24,1981. On that morning, Muse was a fare-paying passenger on a NOPSI bus. When the bus reached Muse’s destination at the corner of Dumaine and North Miro Streets in New Orleans, the bus driver stopped in the street rather than pulling to the curb because a car was illegally parked in the bus stop zone. As Muse stepped off the bus, she fell into the street causing injury to her left ankle.
Trial in this matter was originally held in 1983. At that trial, the trial judge granted NOPSI’s motion for directed verdict at the close of the plaintiff's case. Plaintiff appealed the granting of the directed verdict in NOPSI’s favor and this court reversed that trial court judgment and remanded this case for trial on the merits. Muse v. New Orleans Public Service, Inc., 449 So.2d 164 (La.App. 4th Cir.1984), writ denied, 450 So.2d 967 (La.1984).
Trial on remand resulted in a jury verdict in favor of plaintiff and against defendant awarding plaintiff $1,771.17 in special damages and $22,500.00 in general damages. The trial judge adopted the jury’s verdict and rendered judgment in plaintiff’s favor in the amount of $24,271.17 together with legal interest from the date of judicial demand and all costs of the proceedings. Defendant, NOPSI, now appeals that judgment.
On appeal, NOPSI argues that the trial court erred in adopting the jury’s finding *507 that NOPSI was negligent in this case and that Muse was not contributorily negligent and in awarding excessive damages for plaintiffs injuries. The evidence at trial established that the plaintiff was a fare-paying passenger on a NOPSI bus on April 24, 1981 and that she disembarked at the comer of Dumaine and North Miro Streets in New Orleans and fell down in the street. Also established was the fact that the bus stopped in the street, rather than by the curb, to let passengers disembark because a car was illegally parked in a bus stop zone.
There was conflicting testimony, however, as to whether the plaintiff fell while one foot was on the bottom step of the bus and the other foot got caught in an indentation in the street or whether the plaintiff fell after she had disembarked the bus and taken one or two steps in the street.
The only two people who testified on this issue were the plaintiff and the bus driver, Woodrow Manego. The plaintiff testified that her right foot was still on the bottom step of the bus when she stepped off the bus with her left foot and the heel of that shoe was caught in an indentation in the street causing plaintiff to fall off of the bus and into the street. Mr. Manego testified that he saw the plaintiff get off of the bus and take one or two steps into the street before falling. The jury apparently chose to believe the plaintiffs testimony on this issue instead of the testimony of the bus driver. That credibility determination is a reasonable one and will not be disturbed on appeal.
Because the plaintiff showed that she was a fare-paying passenger on a public conveyance and that she did not reach her destination safely, a presumption arose that NOPSI breached its duty to the plaintiff and the burden then shifted to NOPSI to prove that it was without the slightest degree of negligence. McDermott v. New Orleans Public Service, Inc., 420 So.2d 993 (La.App. 4th Cir.1982); Wise v. Prescott, 244 La. 157, 151 So.2d 356 (La.1963). In this case, the evidence established that the NOPSI bus driver did not stop the bus at the curb at the bus stop; rather, he stopped the bus in the street to let off passengers because a car was illegally parked in the bus stop zone. The bus driver testified that he had noticed that a car was in the bus stop zone on an earlier trip on this route but he failed to notify his supervisor of this fact as required by company policy. Furthermore, an alternative bus stop one block away from the stop at Dumaine and North Miro Street could have been used to discharge passengers safely but was not. Therefore, it cannot be said that NOPSI was without the slightest degree of negligence in this case. For these reasons, the jury correctly concluded that NOPSI was negligent in this case.
[2] NOPSI also argues that the jury erred in not finding the plaintiff contribu-torily negligent in this case. Specifically, it argues that plaintiffs testimony that she saw cracks and potholes in the street before she fell indicates gross negligence on the part of plaintiff in failing to exercise ordinary care and maintain a proper lookout. However, plaintiff testified that she did not see the indentation into which the heel of her shoe got caught causing her to fall. Furthermore, if NOPSI had not negligently allowed passengers to disembark in the street instead of at the curb or at another place of reasonable safety, the condition of the street would not have ever been considered in this case. In light of the evidence, the jury did not err in finding plaintiff free from negligence in this case.
Finally, the defendant argues that the jury’s general damages award of $22,-500.00 which was adopted by the trial judge was excessive in light of plaintiffs injuries. Plaintiff suffered a sprained left ankle in her fall; however, the testimony at trial varied as to the severity of this sprain. Plaintiff was initially treated by Dr. Calvin Johnson who died prior to this trial on remand. Dr. Johnson’s testimony at the first trial which ended after the granting of the directed verdict in the defendant’s favor indicated that he diagnosed plaintiff as having suffered an acute sprain of her left ankle. Plaintiff was given pain medication and was told to apply ice to the ankle and to elevate it. Dr. Johnson testified that *508 plaintiff had mild swelling of the ankle during the course of his five month treatment of her. At her final visit in October, 1981, Dr. Johnson determined that plaintiff had recovered from her ankle injury.
The plaintiff was also treated by Dr. James Williams and Dr. John Watermier. Dr. Williams testified that he first treated the plaintiff in June, 1981 for complaints of pain in her foot and ankle. His physical and x-ray examination did not reveal any objective evidence of residual injury. Dr. Williams re-examined plaintiff in 1987 when she had complaints of continuing pain in her foot and ankle and pain in her knee which she started experiencing several years after the accident. He stated that x-rays taken of her knee in 1987 did not reveal any evidence of bone injury but did reveal arthritis. Dr. Williams opinion is that the 1981 accident neither caused the arthritis nor aggravated any pre-existing arthritis condition. His 1987 physical and x-ray examination also did not reveal any evidence of residual injury or disability in plaintiffs ankle or foot.
Dr. John Watermier first treated plaintiff in 1987. He testified that it was his opinion that plaintiff may have sustained a knee injury and that that injury may have been related to her 1981 fall from the NOPSI bus. However, Dr. Watermier stated that he based that opinion on plaintiffs account of her medical history because there were no objective findings other than mild arthritis which was revealed on plaintiffs x-rays. Furthermore, Dr. Watermier recommended that plaintiff undergo certain diagnostic studies needed to properly evaluate her injuries but she failed to follow that recommendation.
On the basis of the medical evidence presented, we conclude that the general damages award of $22,500.00 to plaintiff is excessive for her injuries which were proven to have been sustained as a result of her fall from the NOPSI bus. We find that a general damages award of $10,000.00 is more appropriate in view of the evidence presented. Both parties stipulated as to the special damages award to plaintiff of $1,771.17.
Therefore, the judgment of the trial court is amended to reduce the plaintiffs award from $24,271.17 to $11,771.17. In all other respects, the trial court judgment is affirmed.
AMENDED AND AFFIRMED.