BYRNES, Judge.
In these consolidated cases plaintiff seeks damages for personal injuries he sustained in two separate vehicular accidents. A jury awarded the plaintiff the sum of $136,500 against the plaintiffs uninsured motorist carrier.[1] The plaintiff appeals this judgment complaining that the trial court erred in: (1) its refusal to grant a judgment N.O.V.; (2) in its charge to the jury regarding their calculation of damages; and (3) in its refusal to grant an additur. We affirm the judgment of the trial court.
The record reveals the following facts:
On the evening of January 21,1984 plaintiff received a telephone call from his father wherein he was advised that his mother had had a stroke. The plaintiff proceeded to his parent’s house which is located in New Orleans East, Lake Kenilworth Subdivision. When he arrived he was told an emergency unit had transported his mother to Methodist Hospital. A neighbor drove Perschall to the hospital and the pair arrived at about midnight. Perschall stayed with his mother until about 5:00 a.m. on the morning of January 22, 1984. He then got into his automobile to drive home. According to the plaintiff, he proceeded southward on Read Road in the right lane. At a point where the road narrows he saw a light in his mirror, heard an engine speed up and a truck which was pulling a boat, struck plaintiff’s vehicle on the left front side. The plaintiff stated he stepped on his brakes, rolled over the curb into the grass where he struck a tree. The truck did not *938 stop. Plaintiff left his vehicle and went to a nearby police station where he reported the incident to New Orleans Police Officer Kenneth Maes. Officer Maes investigated the accident and filed a written report (88-CA-2357).
Thereafter, on July 3, 1986, at approximately 6:50 a.m. Kenneth Perschall was traveling west on Almonaster Street in New Orleans. As he reached the intersection of Almonaster and Louisa Streets and was proceeding on a green light, his vehicle was struck by a van which had turned into his path against a red light. The van was owned by Orleans Parish School Board, operated by Earl Landry, and insured by Commercial Union Insurance Company.[2] (88-CA-2358).
In each of these vehicular accidents the plaintiff sustained injuries to his back for which he received extensive medical treatment.
JUDGMENT N.O.V.
In his first assignment of error the plaintiff contends that a judgment notwithstanding the verdict should have been granted by the trial court on the jury’s assessment that the plaintiff was contribu-torily negligent in the “hit-and-run” accident of January 22, 1984. He reasons that the defendant failed to prove contributory negligence. The plaintiff argues that since no evidence of contributory negligence was presented to the jury, the trial court erred in refusing to grant the judgment notwithstanding the verdict on this issue. We disagree.
In Blum v. New Orleans Public Service Inc., 469 So.2d 1117 at 1119-1120 (La.App. 4th Cir.1985) this Court discussed the standard to be utilized in considering a motion for a judgment notwithstanding the verdict:
In ruling on a motion for a judgment notwithstanding the verdict, pursuant to LSA-C.C.P. Art. 1810 (now substantially reenacted in LSA-C.C.P. Art. 1811), the trial judge considers all of the evidence and reasonable inferences in a light most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the motion should be granted and the trial judge should render a judgment notwithstanding the jury’s findings. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions, the motion for judgment N.O.V. should be denied. In applying this standard, the court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its factual judgment for the jury’s. Rougeau v. Commercial Union Insurance Co., 432 So.2d 1162 (La.App. 3rd Cir.1983), writ denied 437 So.2d 1149 (La.1983); Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), appeal after remand, writ denied 415 So.2d 954 (La.1982).
In this case evidence was presented to the jury from which they could have concluded that the plaintiff was contributorily negligent.
That is, James Seal, a draftsman, presented the jury with a sketch of the accident scene testified that the site of the accident is a six lane highway divided by a median and consists of three lanes going north and three lanes going south. In the area of the accident the southbound right hand lane of traffic merges into the middle lane.
This testimony regarding the accident site was corroborated by New Orleans Police Officer Kenneth Maes, who had investigated the accident after its occurrence. Additionally, Officer Maes testified that at the point where the traffic lanes merge, the vehicle in the right lane would be required to yield the right of way to a vehicle in the middle lane.
*939 In his testimony concerning the accident, the plaintiff Kenneth Perschall testified that he was traveling southbound on Read Blvd., in the right hand lane. In the vicinity of the narrowing of that roadway he heard the other vehicle speed its engine and then strike him in the left front side. Since the plaintiff was in the right hand lane at the time of the accident and since, according to the testimony of Officer Maes the plaintiff would have had to yield the right of way, his failure to do so would have amounted to contributory negligence. As such the plaintiffs assertion that the defendant failed to prove contributory negligence is without basis in fact.
Moreover, the defendant presented additional evidence of the plaintiffs possible negligence in that the plaintiff was subject to seizures and, because of this fact, had been directed not to drive.
The plaintiff admitted that at the time he applied for his insurance coverage with State Farm he had been apprised by Dr. Taylor, his psychiatrist, that he was suffering from a seizure disorder. The plaintiff, however, did not disclose this condition as a physical disability when he completed the insurance application.
Dr. Levy, a neurosurgeon who examined the plaintiff in 1986, testified that the plaintiff gave him a history of convulsions. Dr. Levy testified that the plaintiff told him that he suffered from the condition from 1983 through 1986. According to the plaintiffs history, the last major convulsion occurred in the latter part of 1983, however he continued to suffer from minor seizures which occurred about once a month. Dr. Levy further testified that Perschall relayed to him that he would experience the seizures suddenly and they would last from 20 to 30 seconds to one minute, with no loss of consciousness. According to Perschall he was no longer taking medicine to suppress his condition and he had begun to drive again sometime in 1985. Dr. Levy stated that such convulsions may result from chemical changes in the brain caused by a blow to the head. Considering the plaintiffs history, Dr. Levy stated he would not recommend that the plaintiff be allowed to drive.
Dr. Gregory Ferriss, the plaintiffs treating neurologist, testified that he was asked for an evaluation of the plaintiff on February 1,1982. He initially diagnosed plaintiff as suffering from epilepsy. Dr. Ferriss testified that the plaintiff relayed to him an incident on January 21,1981 wherein, while talking to a customer, Perschall became unconscious, and began biting his tongue. He was hospitalized and given an anti-epileptic drug.
Following a series of test, Dr. Ferriss reversed his initial diagnosis of epilepsy. The plaintiff continued to have seizures but they were found not to be organic in nature. Dr. Ferriss testified that after his evaluation of the plaintiff in March, 1982, he advised the plaintiff not to drive for at least a year. The plaintiff stopped his anti-epileptic medicine in June 1983.
Dr. Ferriss stated that according to his notes the plaintiff experienced a seizure on April 13,1983 for which he was admitted to Pendleton Memorial Hospital. Dr. Ferriss posited that the witness had a physical reaction to a stressful situation and it was “seizure like” in nature. He agreed that plaintiffs mother’s stroke was such a stressful situation as could provoke such a reaction by the plaintiff.
As such, since the plaintiff was aware of his condition of seizures, discontinued his medication, and continued to drive contrary to his physicians’ instructions, there was sufficient evidence for a jury to conclude that in the date in question the plaintiff was contributorily negligent in causing the accident of January 21, 1984.
The jury was presented with substantial evidence of the plaintiff’s contributory negligence and this evidence was of such a quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions.
As such, the trial could correctly denied the plaintiff's motion for judgment notwithstanding the verdict and we find no error in this regard.
*940 MOTION POR ADDITUR
In his second assignment of error plaintiff contends that the trial court erred in refusing to grant his motion for additur. In particular, Perschall first argues that the jury was misled by the verdict form and the trial court’s jury charge into believing that the plaintiff would receive the sum of $100,000 (previously paid by State Farm Mutual Automobile Insurance Company) free of any assessment for the negligence of the plaintiff. That is, plaintiff contends the jury was led to believe that only the sum they awarded would be subject to a reduction by the percentage of plaintiff’s negligence. (Emphasis Supplied).
The method for a calculation of damages in the event of contributory negligence is set forth in Louisiana Civil Code Article 2323 as follows:
Art. 2323. Computation of damages When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
In this case the trial court set forth its calculation of damages in the judgment:
Judgment is rendered in favor of Kenneth Perschall against State Farm Fire and Casualty Company in the sum of $36,500 (35% x 390,000.00 less $100,000) with interest from date of judicial demand and costs ...
The plaintiff concedes, in brief, that there is nothing inherently improper in calculating the plaintiff’s award in the manner done by the Trial Court; however he alleges that this should have been disclosed to the jury.
Our review of the record indicates that the jury in this case was presented with the following interrogatories concerning damages on the verdict form:
3.Did plaintiff suffer damages, general and special, as a result of this accident, which exceed the sum of $100,000 previously paid.
YES
YES OR NO
If # 3 is answered "no” stop here; if “yes” continue.
4.Was plaintiff, Kenneth Perschall guilty of contributory negligence which was a cause in fact of his own damages?
YES
YES OR NO
If #4 is answered “no” skip # 5; if answered “yes”, answer # 5.
5.Assign a percentage of fault to the unidentified motorist, and a percentage of fault to plaintiff.
a. Unidentified motorist.35%
b. Plaintiff.65%
Added together, the percentage must total 100%
6.What damages, general and special, has plaintiff sustained as a result of his accident, in excess of $100,000.00?
$290,000
We find nothing in the construction of the jury form which could have misled the jury into believing that only their damage award would be subject to a reduction for the percentage of the plaintiff’s negligence. The record indicates, and the parties concede, that the jury was aware that the sum of $100,000 had already been paid to the plaintiff. Accordingly, any award by the jury would be a sum “in excess of 100,-000”.
We have also reviewed the court’s jury charges in this case and we note the approval of those charges by the plaintiff. [Vol 3TR 220]. Additionally we note the following pertinent portion of the court’s charge:
*941 If you find the damages exceed $100,000 you put by what amount they exceed $100,000 and that will be the award. Now if you have plaintiff to be contribu-torily negligent the amount of damages will be reduced by the percentage of his' fault. So if you find him for instance 50% percent at fault and you found some damages in excess of $100,000, you obviously have or you would not be down that far in the questions if you had not, you add the $100,000 and whatever you find in excess of $100,000 and you would reduce this amount by his percentage of fault, you do not have to do the arithmetic, I will do the arithmetic, but I want you to know what you were doing because you are going to be doing it. [Vol 3 TR 216].
The jury charge taken as a whole, and the cited portion in particular, convince us that the jury was clearly apprised by the court that the sum of $100,000.00 would be added to whatever amount the jury awarded the plaintiff and this total amount would be discounted by the plaintiffs percentage of fault. We are satisfied that the jury was cognizant of this fact and took it into account in setting the amount of the plaintiffs award and in assessing the plaintiffs percentage of fault. Under these circumstances the trial judge correctly denied the plaintiffs motion for additur on these grounds.
In plaintiffs final argument on his motion for additur, and, in the alternative, for a new-trial, he alleges that the jury’s damage award of $390,000 barely covers the plaintiffs economic loss. He contends that Dr. Wolfson’s, a forensic economist, established the plaintiff’s loss wages (past and future) at $384,029 and there was no countervailing evidence presented on this issue. Thus, he reasons the total award should be increased by 200,000 as so to compensate plaintiff for his personal injuries and disability, in addition to his loss wages.
In assessing damages in cases of quasi-offense, much discretion is left to the trier of fact and an appellate court will not disturb such an award unless the record reveals a clear abuse of discretion. See: Perniciaro v. Brinch, 384 So.2d 392 (La.1980).
In this case Dr. Melville Wolfson testified that the plaintiff was born in June 1941 and should retire at age 61.5. As such, the plaintiff has 14.5 years of work life remaining. His loss past wages (i.e., those from the day of the accident until the date of trial) were stated, by Dr. Wolfson to be $56,418.00. Plaintiff loss future wages (i.e., those from the date of the trial until the projected retirement date) were estimated by Dr. Wolfson, to be $327,611.
Under cross examination Dr. Wolfson conceded that his calculations were based only upon the information which he was provided and in making his decision he assumed that the plaintiff was unable to work and that the inability to work was causally related to the accident. He did state however, that if the jury concluded the plaintiff was not disabled then his past and future loss wages would be zero. Dr. Wolfson also conceded that he was not informed that the plaintiff was receiving $250 per week in compensation and this fact would reduce the plaintiff’s loss earnings by 13,000 per year.
Based upon Dr. Wolfson’s testimony, under cross examination, the jury had sufficient information to discount the original loss wage amount presented to them. Although it is unclear what portion of the jury award of $390,000 constitutes loss wages, we are satisfied from our review of the record that- the sum awarded includes these items of damages, in addition to an award for personal injury and disability. Considering the plaintiff’s injuries and their effect upon him we find that the damage award was reasonable and not an abuse of discretion. Perniciaro v. Brinch, supra; Reck v. Stevens, 373 So.2d 498 (La., 1979). For this reason we agree with the trial court’s refusal to grant an additur on the basis of the plaintiff’s contention that the award was inadequate.
*942 For the reasons assigned the judgment of the trial court is affirmed at plaintiff’s costs.
AFFIRMED.
PLOTKIN, J., concurs in part and dissents in part.

. The plaintiff’s excess uninsured motorist carrier, State Farm Fire & Casualty Co., was cast in judgment for $36,500 after the primary uninsured motorist carrier, State Farm Mutual Automobile Insurance Company, tendered its policy limits of $100,000 prior to trial.

. In this case the Orleans Parish School Board and the insurer, Commercial Union Insurance Company, settled with the plaintiff prior to trial. The sole defendant at trial was the plaintiffs excess uninsured motorist carrier.