DOUCET, Judge.
This is an appeal from a directed verdict dismissing the plaintiffs’ claims for damages allegedly arising from improper ad *246 ministration of pertussis vaccine to a seven-year-old child.
In 1985, Joan Toon received notice from the Calcasieu Parish School Board that her son, David Toon, had to have a Diptheria-Tetanus-Pertussis (DTP) booster in order to continue in school.
On October 22, 1985, Mrs. Toon took David to a vaccination clinic being held by the Calcasieu Parish Health Department. At that time, she was given a consent form advising her of the possible side effects of the vaccine as follows:
POSSIBLE SIDE EFFECTS FROM THE VACCINE: With DTP vaccine, most children will have a slight fever and be irritable within 2 days after getting the shot. One half of children develop some soreness and swelling in the area where the shot was given. More serious side effects can occur. A temperature greater than 102°F may follow 1 out of 20 DTP shots. Convulsions or episodes of limpness and paleness may each occur after 1 in every 1,750 shots. Children who have previously had a convulsion may be more likely to have another one after pertussis shots. Unusual, high-pitched crying may occur after 1 in every 1,000 shots. Rarely, about once in every 110,000 shots, inflammation of the brain (encephalitis) may occur and permanent brain damage may occur about once in every 310,000 shots. Side effects from DT or Td vaccine are not common and usually consist only of soreness and slight fever.
Mrs. Toon signed the form consenting to the immunization beneath the following language:

I have read the information on this form about diphtheria, tetanus, and pertussis and DTP, DT, and Td vaccines. I have had a chance to ask questions which were answered to my satisfaction. I believe I understand the benefits and risks of DTP, DT, and Td vaccines and request that the vaccine checked below be given to me or to the person named below for whom I am authorized to make this request.

David was injected with the vaccine. He was allowed to remain home that day but returned to school the next day.
On October 31, 1985, Mrs. Toon took David to Dr. Richard Landry, a family practitioner. Dr. Landry’s records reflect only that Mrs. Toon was concerned about David’s recent weight gain. Dr. Landry conducted blood tests which were found to be normal. He concluded that David was in good health, but needed to cut back on “junk” food.
On November 17, 1985, David Toon suffered what was later diagnosed as a stroke. He was taken to Lake Charles Memorial Hospital, transferred to St. Patrick’s Hospital, and released the next morning. He returned to school. On November 21,1985, David returned to Dr. Landry with complaints of extreme lethargy. Dr. Landry admitted David to St. Patrick’s Hospital. He was examined by Dr. Gerald Litel, a neurologist, who conducted a CT Scan of David’s brain. The CT Scan revealed a lesion in the left temporal lobe of the brain. Dr. Litel suggested transferring David to a pediatric neurosurgeon for diagnosis. David was transferred to Texas Children’s Hospital in Houston, Texas the next day. In December 1985, Dr. Charles McClug-gage conducted CT Scans and an Angio-gram. He found that David had suffered a stroke or strokes which resulted in death of brain tissue in the left temporal, parietal and occipital lobes. He stated that 15-20% of David’s brain tissue had died. He was unable to hypothesize the cause for the strokes.
Mrs. Toon, individually and as tutrix of David Toon, and Jennifer Gayle Steele, his sister, filed suit against Lederle Laboratories (Lederle), manufacturers of the vaccine, and the Calcasieu Parish School Board, alleging that the vaccine caused the strokes.
A trial on the merits was held beginning on October 29, 1990. At the close of the plaintiffs’ case, both defendants moved for a directed verdict dismissing plaintiffs' claims. They argued that the plaintiffs had not proven a causal connection between the DTP vaccine and the stroke suf *247 fered by David Toon. Lederle further argued that the plaintiffs failed to show a design defect or that a safer alternative product was available. The trial judge granted the motion for the reasons given by the defendants in arguing the motion. The plaintiffs appeal.
In Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir.1979), this Court articulated the standard for granting a directed verdict in a jury trial:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
373 So.2d at 239, quoting Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969).
The question presented on appeal is not whether in our view the plaintiff had proved his case by a preponderance of the evidence, but rather, whether reasonable people could not have reached a verdict in favor of the plaintiff. Villaronga v. Gelpi Partnership No. 3, 536 So.2d 1307 (La. 5th Cir.1988), writs denied, 540 So.2d 327 and 329 (La.1989).
Cliburn v. Colonial Penn Ins. Co., 583 So.2d 103 (La.App. 3rd Cir.1991). After reviewing the record, we find no error in the trial court’s determination that reasonable men could not reach a verdict in favor of the plaintiffs.
The evidence, viewed as a whole, fails to establish a causal connection between the vaccine and the injury suffered by David Toon. The record is devoid of evidence that strokes are one of the known side effects of DTP vaccine. Further, the record reflects that virtually no side effects occur more than 72 hours after innoculation. While encephalitis or swelling of the brain is a possible side effect, Dr. McClug-gage stated that there was no sign of such swelling in David Toon. He further stated that if this sort of swelling should become so great as to block an artery, the pressure would be even throughout the brain and would have a generalized effect. McClug-gage testified that the damage to David’s brain was not the kind associated with toxins.
Dr. Mark Thoman testified as an expert in the fields of pediatrics and toxicology. He opined that David’s stroke was caused by the DTP vaccine. However, he admitted that stroke is not a recognized side effect of DTP vaccine. He further admitted that he knew of no scientific study which made a connection between stroke and DTP vaccine. Apparently he based his conclusion that the stroke was induced by the vaccine on the absence of any other causal factors. However, both he and Dr. McCluggage testified that no cause can be found for most strokes in children. Reviewing this evidence in the light most favorable to the non-mover, we cannot say that there was a causal connection between the administration of the DTP vaccine and the stroke sustained by David Toon.
Accordingly, the judgment of the trial court is affirmed. Costs are assessed to the plaintiffs.
AFFIRMED.